**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **DIANE SCOTT HADDOCK,** | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:18-cv-00817-O** |
| | § | |
| **TARRANT COUNTY, TEXAS and** | § | |
| **PATRICIA BACA-BENNETT** | § | |
| **Defendants** | § | |

---

**DEFENDANT TARRANT COUNTY, TEXAS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT (DOC. 14) AND BRIEF IN SUPPPORT**

---

**M. KEITH OGLE**
State Bar No. 24037207
Assistant Criminal District Attorney
**DAVID K. HUDSON**
State Bar No. 10151150
Assistant Criminal District Attorney

SHAREN WILSON
CRIMINAL DISTRICT ATTORNEY
TARRANT COUNTY, TEXAS

Tarrant County Criminal District Attorney's Office
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor
Fort Worth, Texas 76196
817-884-1233 - Telephone
817-884-1675 – Facsimile
E-Mail: mkogle@tarrantcountytx.gov
E-Mail: dkhudson@tarrantcountytx.gov

**ATTORNEYS FOR DEFENDANT
TARRANT COUNTY, TEXAS**

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................................. iii

I.   MOTION TO DISMISS ......................................................................................... 1

    A.  Plaintiff's Claims ......................................................................................... 1

    B.  Grounds for Dismissal .................................................................................. 3

II.  BRIEF OF AUTHORITIES IN SUPPORT OF MOTION TO DISMISS ........................... 3

    A.  Standards for Rule 12(b)(6) Motions ............................................................... 3

    B.  42 U.S.C. § 1983 County Liability Requirements ............................................. 4

    C.  Diane's First Amended Original Complaint is Wholly Insufficient to State a
       Section 1983 Claim Under *Monell* ................................................................ 5

        1.  *Monell* Element No. 3:  Diane's Two Species of First Amendment
           Retaliation Claims are not Legally Viable ............................................. 6

           *a.  Diane's claims are not ripe* ......................................................... 6

           *b.  As an appointed associate judge, political allegiance can be
              demanded of Diane* ................................................................... 7

        2.  *Monell* Element No. 1:  The Tarrant County Family District Court Judges Are
           Not County Policymakers When Appointing/Terminating Associate Judges ....... 15

           *a.  The* Monell *Policymaker Test* ..................................................... 16

           *b.  Tarrant County Family District Court Judges are <u>State</u> Policymakers
              under* Monell ........................................................................... 16

        3.  *Monell* Element No. 2:  Diane Has Not Identified a County Policy or
           Custom ......................................................................................... 21

           *a.  Diane's conclusory pleading of "Tarrant County's policies" is
               not plausible* .......................................................................... 21

           *b.  Diane did not and cannot state a plausible claim of County
               inaction* ................................................................................ 21

D.  Diane Has Not Pleaded a Plausible Conspiracy Claim .................................................24

III. CONCLUSION ...........................................................................................................25

Signature .....................................................................................................................25

Certificate of Service ..................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbott v. Thetford*,
    529 F.2d 695 (5th Cir. 1976), *rev'd*, 534 F.2d 1101 (5th Cir. 1976) (en banc) ...................... 12

*Adler v. Pataki*,
    185 F.3d 35 (2d Cir. 1999) .................................................................................................... 14

*Anderson v. U.S. Dep't of Hous. & Urban Dev.*,
    554 F.3d 525 (5th Cir. 2008) ................................................................................................... 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 3, 4, 22, 25

*Aucoin v. Haney*,
    306 F.3d 268 (5th Cir. 2002) ............................................................................................ 7, 8, 9

*B.H. v. McDonald*,
    49 F.3d 294 (7th Cir. 1995) .................................................................................................. 12

*Balogh v. Charron*,
    855 F.2d 356 (6th Cir. 1988) ................................................................................................ 12

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*,
    520 U.S. 397 (1997) ......................................................................................................... 4, 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................... 3, 4

*Bennett v. City of Slidell*,
    728 F.2d 762 (5th Cir. 1984) ................................................................................................ 21

*Blackburn v. City of Marshall*,
    42 F.3d 925 (5th Cir. 1995) .................................................................................................... 4

*Borzilleri v. Mosby*,
    874 F.3d 187 (4th Cir. 2017) ................................................................................................ 14

*Branti v. Finkel*,
    445 U.S. 507 (1980) ........................................................................................................... 7, 8

*Caleb v. Grier*,
    598 Fed. Appx. 227 (5th Cir. 2015) ........................................................................................ 6

*City of Canton v. Harris,*
    489 U.S. 378 (1989).................................................................................................22

*Clancey v. City of Coll. Station,*
    No. 4:09-cv-1480, 2011 WL 335148 (S.D. Tex. Jan. 31, 2011)................................................6

*Clark v. Tarrant Cnty., Tex.,*
    798 F.2d 736 (5th Cir. 1986) ..............................................................................17

*Connick v. Myers,*
    461 U.S. 138 (1983)...........................................................................................8, 9

*Connick v. Thompson,*
    563 U.S. 51 (2011)............................................................................................5, 9

*Coughlin v. Lee,*
    946 F.2d 1152 (5th Cir. 1991) .............................................................................9

*Cudd v. Aldrich,*
    982 F. Supp. 463 (S.D. Tex. 1997) .....................................................................15

*Davidson v. City of Stafford, Tex.,*
    848 F.3d 384 (5th Cir. 2017) ..............................................................................24

*Davis v. Tarrant Cnty.,*
    565 F.3d 214 (5th Cir. 2009) ..............................................................................16

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
    489 U.S. 189 (1989)............................................................................................23

*Doe v. Claiborne Cnty., Tenn.,*
    103 F.3d 495 (6th Cir. 1996) ..............................................................................22

*Doe v. Taylor Indep. Sch. Dist.,*
    15 F.3d 443 (5th Cir. 1994) ................................................................................22

*Duffie v. Wichita Cnty.,*
    990 F. Supp. 2d 695 (N.D. Tex. 2013) (O'Connor, J.)............................................5

*Dyer v. Radcliffe,*
    169 F. Supp. 2d 770 (S.D. Ohio 2001) ...............................................................12

*Elrod v. Burns,*
    427 U.S. 347 (1976)..............................................................................................7

*Forrester v. White,*
    484 U.S. 219 (1988)............................................................................................16

*Foster v. Walsh*,
　864 F.2d 416 (6th Cir. 1988) ...................................................................................20

*Garcia v. Reeves Cnty.*,
　32 F.3d 200 (5th Cir. 1995) ...............................................................................9, 23

*Gonzalez v. Kay*,
　577 F.3d 600 (5th Cir. 2009) ..................................................................................4

*Gregorich v. Lund*,
　54 F.3d 410 (7th Cir. 1995) ............................................................................11, 13

*Griffith v. Johnston*,
　899 F.2d 1427 (5th Cir. 1990) ........................................................................23, 24

*Hagin v. Quinn*,
　867 F.3d 816 (7th Cir. 2017) ..........................................................................12, 14

*Hall v. Small Bus. Admin.*,
　695 F.2d 175 (5th Cir. 1983) ................................................................................12

*Hanna v. Home Ins. Co.*,
　281 F.2d 298 (5th Cir. 1960) ................................................................................25

*Jakomas v. McFallas*,
　229 F. Supp. 2d 412 (W.D. Pa. 2002) ............................................................12, 20

*Jett v. Dall. Indep. Sch. Dist.*,
　491 U.S. 701 (1989) ...............................................................................................5

*Johnson v. Bergland*,
　586 F.2d 993 (4th Cir. 1978) ..................................................................................8

*Kicklighter v. McIntosh Cnty. Bd. Of Comm'rs*,
　162 F. Supp. 3d 1363 (S.D. Ga. 2016) ..................................................................20

*Kinsey v. Salado Indep. Sch. Dist.*,
　950 F.2d 988 (5th Cir. 1992) ..................................................................................9

*Larson v. Cantrell*,
　974 F. Supp. 1211 (N.D. Ind. 1997) .....................................................................20

*Lawson v. Dallas Cnty.*,
　286 F.3d 257 (5th Cir. 2002) ..................................................................................5

*McCabe v. Sharrett*,
　12 F.3d 1558 (11th Cir. 1994) ..............................................................................14

*McDaniel v. Woodard,*
    886 F.2d 311 (11th Cir. 1989) ........................................................................11

*McKinley v. Abbott,*
    643 F.3d 403 (5th Cir. 2011) ..........................................................................17

*McMillian v. Monroe Cnty.,*
    520 U.S. 781 (1997).................................................................................16, 20

*Meeks v. Grimes,*
    779 F.2d 417 (7th Cir. 1985) ..........................................................................12

*Monell v. Department of Social Services,*
    436 U.S. 658 (1978) ............................................................................... *passim*

*Morrow v. Balaski,*
    719 F.3d 160 (3d Cir. 2013) (en banc)............................................................24

*Mumford v. Basinski,*
    105 F.3d 264 (6th Cir. 1997) ........................................................13, 14, 19, 20

*Newcomb v. Brennan,*
    558 F.2d 825 (7th Cir. 1977) ............................................................................8

*Oliva v. Heller,*
    839 F.2d 37 (2d Cir. 1988)..............................................................................12

*Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.,*
    577 F.3d 264 (5th Cir. 2009) ............................................................................6

*Patton v. Etowah Cnty., Ala.,*
    No. 4:15-CV-540-VEH, 2015 WL 5275959 (N.D. Ala. Sept. 9, 2015) .................25

*Peterson v. City of Fort Worth, Tex.,*
    588 F.3d 838 (5th Cir. 2009) ..........................................................................24

*Pickering v. Board of Education,*
    391 U.S. 563 (1968)................................................................................ *passim*

*Pineda v. City of Houston,*
    291 F.3d 325 (5th Cir. 2002) ..........................................................................24

*Piotrowski v. City of Houston,*
    237 F.3d 567 (5th Cir. 2001) .....................................................................5, 23

*Polk Cnty. v. Dodson,*
    454 U.S. 312 (1981).......................................................................................22

vi

*R2 Invs. LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005) .................................................................4

*Riley v. Jackson Cnty. Sheriff's Dep't*,
  202 Fed. Appx. 705 (5th Cir. 2006) .......................................................24

*Rutan v. Republican Party of Ill.*,
  497 U.S. 62 (1990) ................................................................................9

*Sarnoff v. Am. Home Prods. Corp.*,
  798 F.2d 1075 (7th Cir. 1986) (Posner, J.) ........................................2, 3

*Sheppard v. Beerman*,
  317 F.3d 351 (2d Cir. 2003) ................................................................11

*Sonnier v. State Farm Mut. Auto. Ins. Co.*,
  509 F.3d 673 (5th Cir. 2007) ...............................................................21

*Spiller v. City of Tex. City, Police Dep't*,
  130 F.3d 162 (5th Cir. 1997) ...............................................................21

*Stegmaier v. Trammell*,
  597 F.2d 1027 (5th Cir. 1979) ...............................................................8

*Stewart v. Miss. Transp. Comm'n*,
  586 F.3d 321 (5th Cir. 2009) .................................................................6

*Stough v. Gallagher*,
  967 F.2d 1523 (11th Cir. 1992) ...........................................................14

*Swear v. Lawson*,
  288 F. Supp. 3d 669 (E.D. La. 2018) .....................................................7

*Terry v. Cook*,
  866 F.2d 373 (11th Cir. 1989) .............................................................14

*U.S. Dep't of Justice v. Fed. Labor Relations Auth.*,
  955 F.2d 998, 1005 (5th Cir. 1992) ........................................................9

*Vojvodich v. Lopez*,
  48 F.3d 879 (5th Cir. 1995) ..............................................................8, 9

*Watts v. Bibb Cnty., Ga.*,
  No. 5:08-CV-413 (CAR), 2010 WL 3937397, at *10-11
  (M.D. Ga. Sept. 30, 2010) ...................................................................20

*Whitley v. Hanna*,
  726 F.3d 631 (5th Cir. 2013) .................................................................4

*Wilson v. Am. Home Assur. Co*,
No. 3:13-cv-3600-O, 2014 WL 1318384 (N.D. Tex. Apr. 2, 2014)
(O'Connor, J.) ........................................................................................................1

**State Cases**

*Abbott v. Pollock*,
946 S.W.2d 513 (Tex. App.—Austin 1997, pet. denied)..................................17, 23

*In re Barr*,
13 S.W.3d 525 (Tex. Spec. Ct. Rev. 1998).............................................................17

*Cnty. v. Stringer*,
843 S.W.2d 477 (Tex. 1992).....................................................................................18

*Gillespie v. Gillespie*,
644 S.W.2d 449 (Tex. 1982).....................................................................................10

*In re Hecht*,
213 S.W.3d 547 (Tex. Spec. Ct. Rev. 2006)...........................................................17

*Henry v. Cox*,
520 S.W.3d 28 (Tex. 2017).......................................................................................18

*Jacobs v. Jacobs*,
687 S.W.2d 731 (Tex. 1985).....................................................................................10

*Pritchard & Abbott v. McKenna*,
350 S.W.2d 333 (Tex. 1961)...............................................................................19, 23

*Renken v. Harris Cnty.*,
808 S.W.2d 222 (Tex. App.—Houston [14th Dist.] 1991, no writ) .......................19

*In re Slaughter*,
480 S.W.3d 842 (Tex. Spec. Ct. Rev. 2015)...........................................................17

*Townsend v. Vasquez*,
No. 01-17-00436-CV, 2018 WL 5074529 (Tex. App.—Houston [1st Dist.]
Oct. 18, 2018, no pet. h.)............................................................................................11

**Federal Statutes**

42 U.S.C. § 1983.............................................................................................. *passim*

**State Statutes**

TEX. FAM. CODE ANN. § 201.001 et seq. (West 2014 and West Supp. 2018) ........................ 1 - 18

**Rules**

FED. R. CIV. P. 12(b)(6) ..................................................................................1, 3, 15, 25

**Constitutional Provisions**

TEX. CONST. art. II, § 1 ........................................................................................17, 23

TEX. CONST. art. V, § 1 ..............................................................................................17

TEX. CONST. art. V, § 1-a ...........................................................................................17

TEX. CONST. art. V, § 8 ..............................................................................................18

U.S. CONST. art. III, § 2 ...............................................................................................6

**Other Authorities**

Tex. Atty. Gen. Op. GA-0126, 2003 WL 22896501 (2003)....................................19, 23

Tex. Atty. Gen. Op. GA-0656, 2008 WL 3999573 (2008)...........................................18

33 TEX. PRAC., *Handbook of Texas Family Law* § 31.3 (West 2017), JOHN F.
    ELDER ..................................................................................................................11

TO THE HONORABLE JUDGE REED O'CONNOR:

Defendant Tarrant County, Texas (the "County") urges the Court to grant its Motion to Dismiss, and Brief in Support (Doc. 5), which was not rendered moot by Diane's amended complaint. *See, e.g., Wilson v. Am. Home Assur. Co*, No. 3:13-cv-3600-O, 2014 WL 1318384, at *1 n.1 (N.D. Tex. Apr. 2, 2014) (O'Connor, J.) (treating motion to dismiss as directed to the live pleading where challenged defects remained). However, the County is filing this Motion to Dismiss First Amended Original Complaint (Doc. 14) and Brief in Support to specifically target Diane's amended complaint. The County has reorganized this motion to argue first that, because Diane is subject to a patronage dismissal, her section 1983 First Amendment retaliation claims against the County are not plausible and should be dismissed (an issue also raised by Judge Patricia Baca Bennett (Doc. 7)), and second, why such claims against the County should otherwise be dismissed. *See* FED. R. CIV. P. 12(b)(6).

## I. MOTION TO DISMISS

### A. Plaintiff's Claims

Plaintiff Diane Haddock asserts that "[t]his is a First Amendment retaliation case" for which she seeks redress under 42 U.S.C. § 1983 (Doc. 14, p. 1 & p. 2 ¶ 4). Diane,[1] a politically-appointed associate judge of the "District Courts hearing family law matters in Tarrant County, Texas" has sued Judge Patricia Baca Bennett, who Diane recognizes is one of the Tarrant County Family District Court judges that has the power to vote for Diane's termination (*Id.*, p. 1, 24 ¶ 23; Doc. 14-18, PageID 344-"Order of Appointment"; TC Ex. 1-an enlarged and legible copy of the Order of Appointment Haddock attached at Doc. 14-18). *See* TEX. FAM. CODE ANN. §§ 201.001(d) (West Supp. 2018) (appointment), 201.004(b) (West 2014) (termination).

---

[1] Following Plaintiff's lead (Doc. 14, p. 2 n. 4), references herein to the Haddocks are made to their first names.

Diane spends significant effort serializing and spinning a set of alleged events and communications concerning Jim Munford – another Tarrant County family law associate judge – who ran in the March 6, 2018 Republican Primary as a candidate for the 322nd Judicial District Court (Doc. 14, pp. 4-18; Doc. 14-1 - 14-23). In sum, Diane alleges that, after failed peace efforts between Diane and Munford (as brokered by Judge Baca Bennett), an internecine Tarrant County Republican party feud erupted among Diane and her husband Gerald, on one side, and Munford and Judge Baca Bennett, on the other (Doc. 14, pp. 4-18).

Diane alleges that Judge Baca Bennett, who supported Munford's candidacy, wanted Diane (1) to support Munford and (2) to have her husband Gerald stop supporting Munford's primary opponent and, instead, support Munford (*Id.*, p. 19 ¶ 12). Diane alleges that when she would not agree to Judge Baca Bennett's requests, Judge Baca Bennett retaliated through "the active maligning and campaigning against Diane within the court house walls . . ., as well as [in] her Facebook posts," which "created a hostile work environment for Diane" designed to make Diane quit (*Id.,* p. 19 ¶ 13, p. 24 ¶ 23). Undisputedly, Diane has not resigned or been terminated. But Diane alleges that Judge Baca Bennett "must not use [her] vote to engage in political retaliation against [Diane]" (*Id.*, p. 24, ¶ 23). Diane says she "always hoped to continue working for Tarrant County until her retirement" – planned for 2022 (*id.*, p. 20 ¶ 15), but "an expectation is not an entitlement." *Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1080 (7th Cir. 1986) (Posner, J.).

Diane has also sued the County (the "employer she loves") (Doc. 14, p. 20 ¶ 15), alleging that, as "Plaintiff's primary employer," the County "refused to protect Plaintiff from such retaliation despite the fact that Defendant Baca-Bennett's retaliatory activity was overt and public, and despite Plaintiff's having made Defendant Tarrant County aware of the hostile environment *__it__* created" (*Id.*, p. 1). [Emphasis added]. Diane – urging a flawed theory of *de facto*

respondeat superior municipal liability – alleges that the County "is therefore equally culpable" (*Id.*).

## B.     Grounds for Dismissal

Diane has not pleaded sufficient facts to state a claim against Tarrant County upon which relief can be granted, and her claims against the County should be dismissed. Under *Monell*,[2] Diane is required to plead facts sufficient to show (1) a policymaker, (2) a policy or custom, or (3) a violation of constitutional rights whose moving force is the policy or custom. She has not done so.

On *Monell's* policymaker element, the County cannot be held liable for the acts of independently-elected state district judges. On the second *Monell* element, Diane has not identified a plausible County policy or custom at issue, and Diane has not and cannot state a plausible claim based on the County failing to protect Diane from state district judges – persons whom the County does not control. Third, Diane has not pleaded – and cannot plead – a viable First Amendment violation because (1) she has not been terminated or resigned and (2) associate judges fall within the exceptional class of public servants of whom political allegiance may be demanded, such that Diane is subject to a patronage dismissal. Diane's conspiracy claim is, likewise, not viable. Thus, Diane's claims against the County should be dismissed. *See* FED. R. CIV. P. 12(b)(6).

## II.     BRIEF OF AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## A.     Standards for Rule 12(b)(6) Motions

To avoid a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "demands more than" alleging that "the-defendant-unlawfully-harmed-me . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than name laws that

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008). Claims must include enough factual allegations "to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

Courts should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint fails to state a plausible claim. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

**B.      42 U.S.C. § 1983 County Liability Requirements**

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) a violation of the United States Constitution or federal law; and (2) that the violation was committed by someone acting under color of state law. *See Whitley v. Hanna,* 726 F.3d 631, 638 (5th Cir. 2013). County liability under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694. A county cannot be held liable under § 1983 based on respondeat superior. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415–16 (1997).

The three county liability requirements are necessary to distinguish between individual violations by local employees and those that can be fairly attributed to the governmental entity

itself. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578-79 (5th Cir. 2001). The Supreme Court

emphasizes an official policy is a necessary predicate to recovery under a county liability theory:

> [A] local government may not be sued under § 1983 for an injury inflicted solely
> by its employees or agents. Instead, it is when execution of a government's policy
> or custom, whether made by its lawmakers or those edicts or acts may fairly be said
> to represent official policy, inflicts the injury that the government as an entity is
> responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, counties may not be held liable for acts of lower level

employees, but may be held liable for constitutional violations committed pursuant to an official

policy or custom. *Piotrowski*, 237 F.3d at 578. Determination of who may be found liable as a

"policymaker" is a matter of state law. *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

Also, the plaintiff must establish that a county's policy or custom was the "moving force"

behind the alleged violation of a constitutional right and that the county was "deliberately

indifferent" to the known consequences of the policy. *Piotrowski*, 237 F.3d at 580; *Lawson v.

Dallas Cnty.*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official

policy with deliberate indifference to a constitutionally protected right."). To establish deliberate

indifference by a county in the context of a failure to supervise, a plaintiff must ordinarily establish

a "pattern of similar constitutional violations" sufficient to give the county "notice that a course of

training is deficient in a particular respect." *Connick v. Thompson*, 563 U.S. 51, 26 (2011).

## C.   Diane's First Amended Original Complaint is Wholly Insufficient to State a Section 1983 Claim under *Monell*

While Diane has attempted to plead First Amendment violations, she has not pleaded

allegations sufficient to state a plausible claim for relief under section 1983. *See Duffie v. Wichita

Cnty.*, 990 F. Supp. 2d 695, 707-10 (N.D. Tex. 2013) (O'Connor, J.) (granting county's motion to

dismiss plaintiffs' section 1983 claims). Diane's claims should, therefore, be dismissed.

1.     _Monell_ **Element No. 3: Diane's Two Species of First Amendment Retaliation Claims Are Not Legally Viable**

Turning first to the case-dispositive issue (*see also* Doc. 7), the key flaw in Diane's First Amendment retaliation claims is her incorrect assumption that she cannot be terminated for political reasons. She can be. Therefore, her claims against the County for either causing or failing to protect her from a politically-motivated termination must be dismissed.

Because of her refusal to support Munford's candidacy, Diane asserts that (1) she suffered an adverse employment decision, (2) her speech involved a matter of public concern, (3) her interest in commenting on matters of public concern outweighed Judge Baca Bennett's and Tarrant County's interests in promoting efficiency, and (4) her speech motivated her employer's adverse action (Doc. 14, pp. 20-22 ¶¶ 16-19). *See Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*, 577 F.3d 264, 271 (5th Cir. 2009). Also, because of her refusal "to get her husband [Gerald] under control," Diane asserts a First Amendment expressive association retaliation claim (Doc. 14, pp. 1, 22-23 ¶¶ 20-21). Diane alleges that (1) she suffered an adverse employment action, (2) her interest in associating with Gerald outweighed her employer's interest in efficiency, and (3) her protected activity was a substantial or motivating factor in the adverse employment action." *See Caleb v. Grier*, 598 Fed. Appx. 227, 237 (5th Cir. 2015). Both types of claims should be dismissed.

a.     *Diane's claims are not ripe*

First, neither claim is ripe. *See* U.S. CONST. art. III, § 2. Diane has not resigned and has not been terminated.[3] Diane has not alleged a materially adverse action on the part of Tarrant County. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). Rather, Diane expresses fear at being fired – that the district judges she serves do not have the votes to terminate her but

---

[3] Diane will likely attempt to rely on *Clancey v. City of Coll. Station*, a case that is distinguishable given that Clancey alleged that he (1) resigned and (2) suffered a constructive discharge; whereas, Diane has not alleged either a resignation or a constructive discharge. No. 4:09-cv-1480, 2011 WL 335148, at *5-6 (S.D. Tex. Jan. 31, 2011).

may in January of 2019 (Doc. 1, p. 19 ¶ 14 & p. 24 ¶ 23). *See Swear v. Lawson*, 288 F. Supp. 3d 669, 695 (E.D. La. 2018) (stating that "fear of future retaliation" is not sufficient to support claim of constructive discharge). Because Diane's injury is speculative, her claims should be dismissed.

### b.    As an appointed associate judge, political allegiance can be demanded of Diane

Second, assuming *arguendo* that Diane's claims are ripe, Diane is subject to a patronage dismissal, so her First Amendment retaliation claims are not viable. In *Elrod v. Burns*, 427 U.S. 347, 357 (1976), the Supreme Court held that because "political belief and association constitute the core of those activities protected by the First Amendment," *id*. at 356, the practice of patronage dismissals "clearly infringes First Amendment interests." *Id*. at 360. Yet, because of the political position Diane holds as an appointed family court associate judge, this Court must further consider whether, in the context of the undisputed facts of this case, Diane has a viable claim for any alleged violation of her constitutional rights. *See Aucoin v. Haney*, 306 F.3d 268 (5th Cir. 2002).

A plurality of the Supreme Court stated that patronage dismissals of those in policymaking positions are permissible in certain cases to ensure that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration...." *Elrod*, 427 U.S. at 367. In *Branti v. Finkel*, the Supreme Court held that if "an employee's private political beliefs would interfere with the discharge of [her] public duties, [her] First Amendment rights may be required to yield to the State's vital interests in maintaining governmental effectiveness and efficiency." 445 U.S. 507, 517 (1980). The Fifth Circuit has stated that "by January 1992 at the latest, the law was [ ] clear that, regardless of whether an employee is a policymaker, a public employer cannot act against an employee because of the employee's affiliation or support of a rival candidate unless the employee's activities in some way adversely affect the government's

ability to provide services." *Vojvodich v. Lopez*, 48 F.3d 879, 887 (5th Cir. 1995) (citation omitted). This concept draws upon *Elrod's* discussion:

> No clear line can be drawn between policymaking and nonpolicymaking positions.... An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals. Thus, the political loyalty "justification is a matter of proof, or at least argument, directed at particular kinds of jobs."

427 U.S. at 367–68 (citation omitted).

The Fifth Circuit has stated that policymakers may be "public employees whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation, or policy determinations made by supervisors." *Aucoin*, 306 F.3d at 273 (quoting *Stegmaier v. Trammell*, 597 F.2d 1027, 1035 (5th Cir. 1979) (citing *Johnson v. Bergland*, 586 F.2d 993 (4th Cir. 1978); *Newcomb v. Brennan*, 558 F.2d 825 (7th Cir. 1977))). "A policymaker also may be an individual who 'controls or exercises a role in a decision making process as to the goals and general operating procedures of (an) office.'" *Id.* Confidential employees also may be subject to patronage dismissals; one is a confidential public employee if "she has access to confidential documents or other materials that embody policymaking deliberations and determinations." *Stegmaier*, 597 F.2d at 1039 (citation omitted). "[T]he ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for effective performance of the public office involved." *Branti*, 445 U.S. at 518.

Furthermore, in *Connick v. Myers*, 461 U.S. 138 (1983), the Supreme Court expressly adopted a balancing analysis first recognized in *Pickering v. Board of Education*, 391 U.S. 563

(1968), to determine the appropriateness of requiring political allegiance. Under *Connick* and *Pickering*, where a public employee is discharged because of the disruptive effect of her own, normally-protected speech, a court must "seek 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Connick*, 461 U.S. at 142 (alteration in original) (quoting *Pickering*, 391 U.S. at 568).

An employee bears the burden of establishing that her speech or activity related to a matter of public concern. For example, campaigning for/against a political candidate relates to a matter of public concern. *See Vojvodich*, 48 F.3d at 884–85; *Coughlin v. Lee*, 946 F.2d 1152, 1158 (5th Cir. 1991). Once an employee demonstrates a matter of public concern, the employer must then establish that its interest in promoting the efficiency of the services provided by its employees outweighs the employee's interest in engaging in the protected activity. *Vojvodich*, 48 F.3d at 885 (*citing U.S. Dep't of Justice v. Fed. Labor Relations Auth.*, 955 F.2d 998, 1005 (5th Cir. 1992)). The Fifth Circuit has noted that in "cases involving public employees who occupy policymaker or confidential positions ... the government's interests more easily outweigh the employee's (as a private citizen)." *Aucoin*, 306 F.3d at 274 (holding assistant district attorneys are subject to patronage dismissals); *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 994 (5th Cir. 1992) (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990)).

Whether a Texas family law associate judge is subject to a patronage dismissal presents a novel question of law within the Fifth Circuit. However, replete federal cases consistently hold that court staff, including associate judges, fall "within the exceptional class of public servants from whom political allegiance may be demanded." *See Garcia v. Reeves Cnty.,* 32 F.3d 200, 205 (5th Cir. 1995). To begin the analysis, this Court should examine the statutory duties and authority

of family law associate judges. An associate judge adjudicates matters pursuant to a family district court judge's referral, TEX. FAM. CODE ANN. §§ 201.005-.007, and makes findings and recommendations that "become[] the order or judgment of the referring court only on the referring court's signing the proposed order or judgment" *id.* § 201.013(b); *see also id.* §§ 201.011(report), 201.012, 201.015 (right to de novo hearing before referring court). A family court associate judge is virtually unlimited in the matters which can be referred by the court. Although the court can limit the power or duties of an associate judge (*id.* § 201.006(b)), it is usually customary to authorize the associate judge to hear any matters permitted by statute, which includes every type of temporary or pretrial hearings, as well as final hearings concerning motions to modify, contempt, any matter involving a default judgment, divorces having a waiver of citation, and any other matter referred by the judge that is in the jurisdiction of the court or any matter on which the parties agree (*id.* § 201.005). The general powers are described in § 201.007 and include the attachment of a witness and detention on a finding of contempt. An associate judge is authorized, if there be no objection, to preside over a jury trial and final hearings, including a final termination hearing (*id.* § 201.009). Associate judges exercise considerable discretion. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).

Associate judges have the judicial immunity of the district judges they serve (*id.* § 201.107) and are bound by the Texas Code of Judicial Conduct. TEX. GOV'T CODE ANN. § 33.01(8)(defining "judge"); TEX. CODE JUD. CONDUCT, Cannon 6(A)(2). Importantly, associate judges are bound by a duty of confidentiality for the matters they handle for referring courts. TEX. CODE JUD. CONDUCT, Cannon 3(B)(11).

One family law commentator noted,

> [i]t might first appear to the practitioner that an associate judge's hearing simply promotes double hearings, particularly in family law matters, because the

losing party would automatically elect to appeal the decision to get a second chance at the relief sought. This has not proved to be the case. The associate judge's program usually means an expedited hearing because the associate judge devotes full time to his or her docket and it is not necessary to wait for the court to complete other hearings or trials or reset the hearing for lack of time.

Sometimes the attorneys, although not completely happy with the findings concerning temporary orders, believe that necessary corrections can be taken care of at the final hearing. **Additionally, the most successful associate judges are those who have a complete familiarity with the system in which they work and with the judicial philosophy of the court for whom they work. This usually results in an associate judge's findings and orders that closely follow the orders that the court would have entered, making a successful appeal unlikely and a waste of time**. [Emphasis added].

JOHN F. ELDER, 33 TEX. PRAC., *Handbook of Texas Family Law* § 31.3 (West 2018). As one Texas court of appeals recently recognized, "[Associate judges] do not have their own courts; ***they assist duly elected judges***. And associate judges' 'employment' is terminable 'at the will' or 'by a majority vote of' the judge or judges that the associate judge serves." *Townsend v. Vasquez*, No. 01-17-00436-CV, 2018 WL 5074529, at *4 (Tex. App.—Houston [1st Dist.] Oct. 18, 2018, no pet. h.) (citing TEX. FAM. CODE § 201.004(a)-(d)) (emphasis supplied). Associate judges, therefore must be loyal to the judges they assist and serve.

Consistently, federal courts have found that judicial staffs – including associate judges – present the "paradigm example" of an employment setting with the unique requirements of cooperation and confidentiality discussed in *Pickering*. *See, e.g., Gregorich v. Lund*, 54 F.3d 410, 417 (7th Cir. 1995) ("a judge's chambers are perhaps '[t]he paradigm example' of an environment in which a close working relationship is essential to perform successfully the public function."); *Sheppard v. Beerman*, 317 F.3d 351, 355-56 (2d Cir. 2003)) ("Thus, at a very minimum, a respectful, if not congenial, relationship between clerk and judge is a prerequisite to a productive work environment within a judge's chambers."); *McDaniel v. Woodard*, 886 F.2d 311, 315 (11th Cir. 1989) (judge was not required to tolerate conduct by confidential secretary "which he

reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships"); *Balogh v. Charron*, 855 F.2d 356, 356-7 (6th Cir. 1988) ("Judges must be able to rely on the confidentiality of the relationship with [judicial] aides, just as they must rely on the confidentiality of their relationship with their private secretaries and law clerks."); *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988); *Meeks v. Grimes*, 779 F.2d 417, 423 (7th Cir. 1985); *Hall v. Small Bus. Admin.*, 695 F.2d 175, 176 (5th Cir. 1983) ("Judges' robes must be as spotless as their actual conduct. These expectations extend to those who make up the contemporary judicial family, the judge's law clerks and secretaries."); *Dyer v. Radcliffe*, 169 F. Supp. 2d 770, 774-75 (S.D. Ohio 2001) (stating that juvenile court referee was "directly responsible to [an] elected official[] … and [held] a fiduciary or administrative relationship to such elected county official"); *Jakomas v. McFallas*, 229 F. Supp. 2d 412, 420 (W.D. Pa. 2002) ("We agree with the defendant that the relationship between a judge and his staff is highly confidential."); *see also Hagin v. Quinn*, 867 F.3d 816, 828 (7th Cir. 2017) (treating appointed worker's compensation commission arbitrators as policymakers for First Amendment purposes).[4]

The unique demands of confidentiality and cooperation in judicial chambers was explained by the Court of Appeals for the Seventh Circuit as follows:

> Among the countervailing governmental interests that have been recognized [for the *Pickering* balancing test] is the practical reality of governance that those with policy-making responsibilities "must have faithful agents." [citation omitted] . . . The application of this principle to the judiciary requires that we adjust our perspective to take into account its particular function within our governmental structure. Courts are not like most other institutions of government. Their primary role is not to formulate or to manage programs, but to decide cases. In this process, the relationship of the decisionmaker to those who assist in the task of deciding cases is unique. . . . Other courts and jurists have recognized that those who work

---

[4] *See also B.H. v. McDonald*, 49 F.3d 294, 297-98 (7th Cir. 1995) (a judge's chambers is "an area traditionally off-limits to the public eyes and ears."); *Abbott v. Thetford*, 529 F.2d 695, 705 (5th Cir. 1976), *rev'd*, 534 F.2d 1101 (5th Cir. 1976) (en banc) (adopting dissent) ("every judge . . . knows the importance of a cooperative and confidential relationship with staff members. The absence of either cooperation or confidentiality is disruptive and inevitably impairs the operation of any court.").

closely with judicial officers must be loyal, cooperative, and responsible, [footnote omitted] Needless to say, confidentiality is essential.

*Gregorich*, 54 F.3d at 417. For instance, where a staff employee was privy to internal memoranda, draft opinions, and the judge's thought processes, the judge needed only to perceive that the employee's attempt to unionize other staff research attorneys threatened the working relationship in his court to terminate the employee, and "was not required to wait for 'events to unfold to the extent that the disruption of the office and the destruction of the working relationships [was] manifest' before he acted." *Id.* (brackets in original) (quoting *Connick*, 461 U.S. at 152).

In *Mumford v. Basinski*, the Sixth Circuit held that an Ohio domestic relations family court referee is "an inherently political post which was not safeguarded from political patronage termination by the First Amendment," holding as follows:

> Unquestionably, the inherent duties of an Ohio domestic relations court referee entail a relationship of confidence between the referee and the judge(s) which he [or she] serves. The referee is privy to confidential litigation materials and internal court communications in the discharge of his [or her] duties, and further maintains a personal confidential relationship with the judge(s) which he [or she] serves. Moreover, the referee effectively makes policy for, or suggests policy to, the court on each occasion that he [or she] resolves a dispute in the court's name or recommends a disposition to a judge. Consequently, his [or her] supervising judge must be convinced that the judgment capabilities of the referee, and the confidential relationships that arise as a result of the intimate judicial and quasi-judicial discussions, are unquestionable. **The referee's political ideology, *associations*, and activities may rationally influence a judge's assessment of an individual's suitability for a position as his [or her] referee.**

105 F.3d 264, 272 (6th Cir. 1997) (internal citations omitted) (emphasis added).

Given the political nature of family law associate judges, the function of family law associate judges in Texas, the close working relationship needed to effectively function on behalf of the courts the associate judges serve, and given replete examples from other jurisdictions concerning judicial personnel – and specifically referees/associate judges, Diane should be treated as an *Elrod-Branti* policymaker, and the *Pickering* balance must tip in favor of the government

because of its overriding interest in ensuring the elected district judges' ability to implement their policies through their subordinates. *See Borzilleri v. Mosby*, 874 F.3d 187, 194 (4th Cir. 2017). "[W]here an employer 'does not violate his [or her] employee's association rights by terminating him [or her] for political disloyalty, the employer also does not violate his [or her] employee's free speech rights by terminating for speech displaying that political disloyalty.'" *Id*.; *see also Hagin*, 867 F.3d at 828 ("[E]lected officials [may] replace high-level and confidential employees not only when those employees merely belong to the 'wrong' political party or faction but also when they engage in speech or other First Amendment activity that could undermine the policy or political goals of the officials accused of the retaliation.").

Moreover, regarding Diane's intimate association retaliation claim, the rationale stated above equally applies to both of her retaliation claims. *Cf. see also Adler v. Pataki*, 185 F.3d 35, 44, 45 (2d Cir. 1999). The fundamental question is whether the district court judges should be forced to keep associate judges whose spouses campaigned against the same appointing/referring judges. While not reached in *Adler*, the court considered applying a *Pickering*-style balancing test to an intimate association retaliation claim. *Id.; see also McCabe v. Sharrett,* 12 F.3d 1558, 1569-74 (11th Cir. 1994) (concluding that intimate association claim failed under either the *Pickering* balance or *Elrod/Branti* tests).[5] A policymaker's **associations** rationally influence a judge's assessment of an individual's suitability for a position. *See Mumford,* 105 F.3d at 272. Diane's right to an intimate association with Gerald must be balanced against the family district court

---

[5] "*Elrod* and *Branti* focus on belief, not on conduct. *Pickering*, on the other hand, focuses on the disruptive potential of expressive conduct rather than on the disruptive potential of belief." *McCabe*, 12 F.3d at 1567 (citing *Terry v. Cook*, 866 F.2d 373, 376–77 (11th Cir. 1989) (suggesting *Elrod–Branti* concern is how employee political beliefs affect loyalty and thereby job performance; whereas, *Pickering* and its progeny focus on expressive conduct, not on mindset of possessing allegiance to employer); *Stough v. Gallagher*, 967 F.2d 1523, 1527 (11th Cir. 1992)).

judges' interest in avoiding disruption attributable to Gerald's political activity in campaigning for/against the family district court judicial candidates who, once elected, will supervise Diane.

Diane and Gerald participated in the politics of the Tarrant County Family District Courts (Doc. 14, ¶¶ 10, 54-56) and they "must face the consequences of [their] choice." *See Cudd v. Aldrich*, 982 F. Supp. 463, 468 (S.D. Tex. 1997) (involving suit by assistant district attorney who "backed the wrong horse" for district attorney). "In politics, it is a common sense rule that the winner gets to call the shots." *Id*. In *Cudd*, the court stated that an elected official was "entitled to ensure that his administration would not be undercut by employees that he knew did not support his policies." *Id*. The same rationale applies here, where Diane and Gerald involved themselves in the politics of the family district court judicial races – including Gerald attacking now Judge-Elect Munford, who will sit on a bench that Diane serves (Doc. 14, ¶ 10, Doc. 14-18, PageID 344-"Order of Appointment"; TC Ex. 1). *See id*.

Because Diane is subject to a patronage dismissal, Diane has no viable section 1983 First Amendment retaliation claim, and this action should be dismissed under rule 12(b)(6).

## 2. *Monell* Element No. 1: The Tarrant County Family District Court Judges Are Not County Policymakers When Appointing/Terminating Associate Judges

If Diane had a valid First Amendment retaliation claim, it would not be against Tarrant County. In her First Amended Original Complaint, Diane tries to tie Judge Baca Bennett's alleged liability to the County: "Plaintiff's [alleged] primary employer," the County, "refused to protect Plaintiff from such retaliation despite the fact that Defendant Baca-Bennett's retaliatory activity was overt and public, and despite Plaintiff's having made Defendant Tarrant County aware of the hostile environment *it* created" (Doc. 14, p. 1). [Emphasis added]. From this allegation, Diane contends that Tarrant County is "equally culpable" in creating the hostile work environment Judge Baca Bennett cultured. But none of the elected state district court judges is a *Monell* **county**-level

policymaker (*Id.* & p. 19 ¶ 12, 20 ¶ 15), and, therefore, Tarrant County cannot be liable for the district judges' appointment decisions or judicial conduct toward their political appointees.

### a.      The Monell *Policymaker Test*

Whether a person is a state or local policymaker for purposes of *Monell* depends on whether the person represents a state or a local government entity when engaged in the events at issue. *See McMillian v. Monroe Cnty.*, 520 U.S. 781, 785–86 (1997). The question does not turn on an all-or-nothing determination of the official's acts, and the characterization may not hold true for every type of official act they engage in. *Id.* at 785. To answer the question, this Court should analyze whether Tarrant County controls the Tarrant County Family District Court judges in their decision(s) and conduct in appointing/terminating their subordinate associate judges.

The inquiry depends on an analysis of state law and does not rest on Diane's labeling. *See id.* at 786. Instead, courts look to a governmental official's actual function, in a particular area, which depends on the definition of the official's function under state law. *Id.* Relevant factors include how the state's laws and courts categorize the official; whether the official is elected and by whom; the official's duties; to whom the official is fiscally responsible, if anyone; which governmental entity sets/pays the official's salary; which governmental entity provides the official's equipment, if any; and the official's jurisdiction. *See id.* at 787–91.

### b.      *Tarrant County Family District Court Judges are* <u>State</u> *Policymakers under* Monell

The act of appointing/terminating associate judges is likely an administrative act. *See Forrester v. White*, 484 U.S. 219, 229 (1988); *cf. Davis v. Tarrant Cnty.*, 565 F.3d 214, 227 (5th Cir. 2009) ("A local judge acting in his or her judicial capacity is not considered a local government whose actions are attributable to the county."). Nevertheless, in taking such an action, the state district judges are acting as arms of the State and not the County.

Under the Texas Constitution, the judicial branch is separate from the legislative and executive branches of Texas government, and none of them "shall exercise any power properly attached to either of the others." TEX. CONST. art. II, § 1. District court judges are vested with judicial power and are "undeniably elected state officials." *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 744 (5th Cir. 1986); TEX. CONST. art. V, § 1. The Supreme Court of Texas is responsible for the efficient administration of the judicial branch and is responsible for promulgating **and enforcing** rules of judicial conduct and administration governing district court judges. TEX. CONST. art. V, §§ 1-a (regarding discipline and removal of state judges; State Commission on Judicial Conduct), 31(a); TEX. CODE JUD. CONDUCT, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B (West 2013 & Supp. 2018); TEX. R. JUD. ADMIN., *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. F app. (West 2013 & Supp. 2018); *see, e.g., In re Slaughter*, 480 S.W.3d 842 (Tex. Spec. Ct. Rev. 2015) (involving alleged improper social media comments); *In re Hecht*, 213 S.W.3d 547 (Tex. Spec. Ct. Rev. 2006) (involving endorsement of federal judicial nominee); *In re Barr*, 13 S.W.3d 525 (Tex. Spec. Ct. Rev. 1998) (involving inappropriate sexual harassment of and conduct toward attorneys and litigants). Furthermore, if state district judges are sued "because of [their] office as judge," they are entitled to Eleventh Amendment Immunity, *see, e.g., McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011), and the Legislature provides that the State's Attorney General "shall defend" such judges upon request. *See* TEX. GOV'T CODE ANN. 74.141 (West 2013).

District courts having family law jurisdiction may request from a county commissioners court the authority to appoint associate judges to serve one or more family court(s). *See* TEX. FAM. CODE ANN. § 201.001. While an associate judge is compensated from the county funds available for payment of officers' salaries, the commissioners court's role is limited to its jurisdiction over the county's budget and extends no further. *See id.* § 201.003(c); *see, e.g., Abbott v. Pollock*, 946

S.W.2d 513, 517 (Tex. App.—Austin 1997, pet. denied) (concerning commissioners courts budgetary power over sheriff's positions); *see* Tex. Atty. Gen. Op. GA-0656, 2008 WL 3999573 (2008) (stating that commissioners court did not have authority to impose rehire restrictions regarding a constable's employee). Indeed, commissioners courts are statutorily prohibited from influencing the appointment/termination of political appointees, which includes family court associate judges. *See* TEX. LOC. GOV'T CODE ANN. § 151.004. Illegal or improper influence could result in district courts exercising their general supervisory control over the commissioners court. *See* TEX. CONST. art. V, § 8; *see, e.g., Henry v. Cox*, 520 S.W.3d 28, 38 (Tex. 2017); *Cnty. v. Stringer,* 843 S.W.2d 477, 479 (Tex. 1992).

Associate judges serving a single court serve at the will of the court's judge. *Id*. § 201.004(a). Associate judges serving more than two courts may be terminated by a majority vote of the courts they serve. *Id*. § 201.004(b) – (c). Accordingly, ***only*** state judicial officials (*i.e*., the family district court judges) have the power to appoint or terminate their associate judges. *See* TEX. FAM. CODE ANN. § 201.001, § 201.004; *see also* JOHN J. SAMPSON, HARRY L. TINDALL, ET AL., *Sampson & Tindall's Texas Family Code Annotated, Chapter 201 Introductory Comment*, p. 1006 (Aug. 2018 ed.) ("The elected judges were given both appointment authority and the duty to supervise."). Diane was appointed to serve all "District Courts hearing family law matters in Tarrant County, Texas" and, therefore, can only be terminated by a majority vote of those courts' judges. *See id.* § 201.004(b) (Doc. 14, p. 24 ¶ 23; Doc. 14-18, PageID 344; TC Ex. 1).

Although not addressing the precise issue of *Monell* liability, in a 2003 Texas Attorney General Opinion, then Attorney General Greg Abbott opined on the constitutional and statutory framework governing family law masters and associate judges and the relationship of those positions both to the appointing state district judges, as well as to the commissioners court of the

county in which those positions are authorized. Tex. Atty. Gen. Op. GA-0126, 2003 WL 22896501 (2003). Importantly, the opinion recognizes the **legislative function** of the commissioners court in creating the budget for the county's offices and departments and in setting the rate of compensation for county employees *Id*. at *5. The opinion recognizes that an elected officer (such as a state district judge) "occupies a sphere of authority, which is delegated to [that officer] by the Constitution and law . . . which another officer [*i.e.*, a county official] may not interfere [with] or usurp." *See id.* (citing *Pritchard & Abbott v. McKenna*, 350 S.W.2d 333, 335 (Tex. 1961)). "That authority generally includes autonomy in hiring and firing employees." *Id.*, at *6 (citing *Pollock*, 946 S.W.2d at 517; *Renken v. Harris Cnty.*, 808 S.W.2d 222, 224 (Tex. App.—Houston [14th Dist.] 1991, no writ)).[6] Accordingly, the County operates in a separate sphere of authority from the State Judiciary on the issue of associate judge terminations and cannot be found liable for the decisions that elected state officials make with respect to such court personnel.

There is no case holding that a Texas state district judge is a state policymaker under *Monell* with respect to the appointment/termination of an associate judge, but cases from other jurisdictions are instructive. In *Mumford v. Basinski*, Mumford was the appointed chief Referee of the Lorain County Common Pleas Court Domestic Relations Division (the "Domestic Relations Court"). 105 F.3d at 266. Mumford, a Democrat, served under an elected judge, also a Democrat. *Id*. When Republican Zieba was elected, he fired Mumford. *Id*. Mumford filed First Amendment section 1983 claims against Zieba; his successor, Basinski; and the county. *Id*. at 267.

At issue was whether, for purposes of section 1983 liability, the Domestic Relations Court was a State of Ohio entity, or instead an appendage of the Lorain County government. The court

---

[6] Notably, the AG Opinion opined that, for purposes of Title VII, "a court would conclude that Title VII does not apply to an applicant for an associate judge position under Family Code, chapter 201, subchapter A." This is so because associate judges would either be treated as personal staff or policy making level appointees and not employees under Title VII. Tex. Atty. Gen. Op. GA-0126, 2003 WL 22896501, at *8 n.40.

first examined a prior opinion mandating that an Ohio municipal court was a state government component. *Id.* at 268 (citing *Foster v. Walsh*, 864 F.2d 416 (6th Cir. 1988)). The court also noted that the Ohio Constitution gives supervisory authority over all courts of that state, and the authority to promulgate rules for all Ohio courts, to the Ohio Supreme Court. *Id.* (citing OHIO CONST. art IV, § 5). The Lorain County Domestic Relations Court was created by statute. *Id.* at 268-69.

Additionally, the court noted that the authority to hire the Domestic Relations Court referee is delegated by state statute to the courts and not to counties. *Id.* at 269. Such employees are compensated from special court funds rather than from county treasury general revenues. *Id.* Unexpected vacancies in any state judicial position are temporarily filled by gubernatorial appointment until a future election. *Id.* (citing OHIO CONT. art IV, § 13). Also, the Ohio legislature has compelled county governments to provide facilities and courtrooms to support the operation of the common pleas courts. *Id.* By statute, such courts are to submit annual funding requests to the local board of county commissioners. *Id.* Examining these facts, the court held that an Ohio common pleas court was an arm of the state for purposes of section 1983 liability. *Id.* Therefore, the referee's claims against Basinski in his official capacity failed. *Id.* The county had already been dismissed, but dismissal would have been proper based on the holding that the two judges were state policymakers under *Monell* regarding their political decision not to reappoint Mumford.

Under *McMillian* and its progeny,[7] the County cannot be held liable for the district court judges' decisions or conduct concerning the retention or termination of Diane. Based on the

---

[7] Beyond *Mumford*, other district courts have specifically determined that state judges appointing court personnel are state policymakers under *Monell. See, e.g.*, *Kicklighter v. McIntosh Cnty. Bd. Of Comm'rs*, 162 F. Supp. 3d 1363, 1376 (S.D. Ga. 2016) ("[The] County had no control over who Defendant … hired and fired. Thus, [the County] cannot be liable under Plaintiff's § 1983 claim."); *Watts v. Bibb Cnty., Ga.*, No. 5:08-CV-413 (CAR), 2010 WL 3937397, at *10-11 (M.D. Ga. Sept. 30, 2010) (determining appointed magistrate's § 1983 gender discrimination claim against county for conduct by an elected judge in not reappointing him was not viable under *McMil*, 229 F. Supp. 2d at 427-28 ("[The judge] could not have been acting as a policymaker for the County when he discharged the plaintiffs."); *Larson v. Cantrell*, 974 F. Supp. 1211, 1219 (N.D. Ind. 1997) (concluding former court employee fired by judge could not hold the county liable under section 1983).

separation of powers doctrine expressed in the Texas Constitution, Texas statutes, Texas Attorney General guidance, and analogous case law, the Tarrant County Family District Court judges are State of Texas – and not County – policymakers with respect to the appointment/termination of their associate judges. As such, Diane's claims against the County should be dismissed.

### 3.   *Monell* Element No. 2: Diane Has Not Identified a Plausible County Policy or Custom

#### a.   *Diane's conclusory pleading of "Tarrant County's policies" is not plausible*

Diane must identify a policy or custom, connect the policy or custom to the County itself, and show that she was injured because of the specific policy or custom. *See Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984). Diane alleges that two state district judges "violated Tarrant County's policies regarding commenting on social media about Diane's employment status with Tarrant County" (Doc. 14, p. 19 ¶ 12). This allegation of a policy in the Complaint is not plausible. *See Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."). Having failed to plausibly allege a Tarrant County policy, Diane's claims against the County should be dismissed.

#### b.   *Diane did not and cannot state a plausible claim of County inaction*

In her First Amended Original Complaint, Diane devotes considerable effort to pleading numerous alternative, mutually-exclusive written and unwritten policies, including making allegations that Tarrant County Judge Glen Whitley and H.R. Director Tina Glen are *Monell* policymakers (Doc. 14, ¶¶ 25-57). While this Court must accept all ***well-pleaded facts*** in Diane's live pleading as true and view them in the light most favorable to Diane, *see Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007), this Court is not bound to accept Diane's

erroneous legal conclusions or fallacious arguments as true, *see Iqbal*, 556 U.S. at 678. As a matter of law, the County had no duty to protect Diane from alleged political retaliation by state officials.

"In virtually every instance where a person has had his or her constitutional rights violated by a [county] employee, a § 1983 plaintiff will be able to point to something the [county] 'could have done' to prevent the unfortunate incident." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). A court must avoid falling back to "de facto respondeat superior liability" which the Supreme Court "explicitly prohibit[s.]" *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996). As a result, there must be a "direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 404. And the policy identified by a plaintiff must be "the moving force of the constitutional violation in order to establish the liability of [the] government body." *Polk Cnty. v. Dodson*, 454 U.S. 312, 454 (1981). "To adopt lesser standards of fault and causation would open [counties] to unprecedented liability." *City of Canton*, 489 U.S. at 391.

Here, Diane has improperly asserted an impermissible de facto respondeat superior liability claim against the County that, if allowed, would potentially subject the County to unprecedented liability. *See id.; Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994). Because the district judges are state officials, the Tarrant County's Commissioners Court, County Judge Whitley, and H.R. Director Glenn, as a matter of law, are not *Monell* policymakers and do not create County liability for the state officials' conduct in hiring/terminating their associate judges.

The appointment practice of the Tarrant County Family District Court judges is a State and not a County function, and it does not involve any County policy or custom. Diane has not and cannot allege a direct causal link between alleged Tarrant County inaction and the deprivation of

federal rights at the hands of state judicial officials. On this point, the County questions Diane's belief that the County has the authority to regulate independently-elected state officials' conduct.

As this Court and Diane know, Texas has three separate branches of government. *See* TEX. CONST. art. II, § 1. As discussed above, the County cannot "interfere [with] or usurp" state judicial officials' sphere of authority. *See* Tex. Atty. Gen. Op. GA-0126, 2003 WL 22896501, at *6 (citing *Pritchard & Abbott*, 350 S.W.3d at 335). Thus, Diane cannot advance a legal theory that the County has coterminous supervisory authority – with the judicial branch of the State of Texas – over elected state judicial officials' decision making and conduct in hiring/firing associate judges.

Moreover, although Diane has now attached part of Tarrant County's Employee Handbook to allege numerous written and unwritten policies (Doc. 14 ¶¶ 25-56), the Commissioners Court could not, through the adoption of personnel policies, change an associate judge's employment status (for example, from at-will to just-cause), preclude patronage dismissals, or assume any legal duty for the state district court judges' termination of their associate judges. *See Abbott*, 946 S.W.2d at 517; *Reeves Cnty*, 32 F.3d at 203; *see* Doc. 14-24, PageID 372 ("These policies are only guidelines.... [and] do not constitute a contract of employment, nor any other binding agreement."). The Employee Handbook does not preclude permissible associate judge patronage dismissals.

Regarding Diane's allegations that the County failed to protect her from non-County actors, aside from the fact that the County is statutorily-prohibited from influencing the state officials' appointment/termination decisions, the County is under no duty to protect Diane from those state officials' conduct. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196–97 (1989); *Piotrowski,* 237 F.3d at 583. Any duty to protect must be moored to a "special relationship," which the Fifth Circuit has limited to three scenarios: (1) incarceration; (2) involuntary institutionalization; and (3) the placement of children in foster care. *Griffith v.*

*Johnston*, 899 F.2d 1427, 1439 (5th Cir. 1990). As a matter of law, Diane was not in a "special relationship" with the County, so the County owed no duty to protect her from any alleged unconstitutional conduct of non-County actors (such as, the state judges she serves). *See id.; see also Morrow v. Balaski*, 719 F.3d 160, 163-64 (3d Cir. 2013) (en banc) (affirming dismissal of § 1983 claim against school district for alleged failure to protect student from alleged bullying).

Further, Diane did not plausibly allege a widespread practice constituting a custom by referencing, without context, ***one*** 20-year-old case involving non-policymaking sheriff's department employees (Doc. 14, ¶ 50). Plaintiffs must show "similarity, specificity, and sufficiently numerous prior incidents." *See, e.g., Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017) (rejecting claim of pattern of practice based on insufficient prior incidents); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (same)*; Riley v. Jackson Cnty. Sheriff's Dep't*, 202 Fed. Appx. 705, 706-07 (5th Cir. 2006) (same); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (same). Diane's claim of widespread practice constituting a custom is not plausible.

Because Tarrant County is statutorily prohibited from influencing the associate judges' selection, because Diane is subject to a patronage dismissal, and/or because no duty otherwise exists under the law to "protect" Diane, the County could not, as a matter of law, have violated a written or unwritten policy or custom in not protecting her from a patronage dismissal made by state officials or non-County employees. Diane's claims against the County should be dismissed.

### D.    Diane Has Not Pleaded a Plausible Conspiracy Claim

In footnote 20, Diane references a section 1983 conspiracy claim without pleading any specific facts in support of the elements of such a claim (Doc. 14, p. 23). Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice," Diane's conspiracy claim is not plausible. *See Iqbal*, 556 U.S. at 678; s*ee also Patton v. Etowah Cnty., Ala.*, No. 4:15-CV-540-VEH, 2015 WL 5275959, at *2 (N.D. Ala. Sept. 9, 2015) ("talismanic recitations of doctrinal buzzwords will not do"). Further, because Diane's conspiracy claim is not actionable without a violation of section 1983 (*see Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960)), which Diane did not and cannot assert, Diane's conspiracy claim should be dismissed for failing to state a claim upon which relief can be granted.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff Diane Scott Haddock is not entitled to relief or recovery against Tarrant County, Texas, and all claims as to Tarrant County, Texas, and this action, should be dismissed. *See* FED. R. CIV. P. 12(b)(6).

Respectfully submitted,


*/s/ M. Keith Ogle*
**M. KEITH OGLE**
State Bar No. 24037207
Assistant Criminal District Attorney
**DAVID K. HUDSON**
State Bar No. 10151150
Assistant Criminal District Attorney

SHAREN WILSON
CRIMINAL DISTRICT ATTORNEY
TARRANT COUNTY, TEXAS

Tarrant County Criminal District Attorney's Office
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor – Civil Division
Fort Worth, Texas 76196
817-884-1233 – Telephone
817-884-1675 – Facsimile
E-Mail: mkogle@tarrantcountytx.gov
E-Mail: dkhudson@tarrantcountytx.gov
**ATTORNEYS FOR DEFENDANT
TARRANT COUNTY, TEXAS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing document was served upon the following parties in accordance with the provisions of Rule 5, FED. R. CIV. P., on December 20, 2018:

| | |
|---|---|
| **Walter L. Taylor** | *Via E-mail and CM/ECF electronic* |
| **The Hart Law Firm** | *transmission:* **Wtaylor@thehartlawfirm.com** |
| 6630 Colleyville Blvd., Suite 100 | |
| Colleyville, Texas  76034 | |
| ---------- | |
| P.O. Box 164067 | |
| Fort Worth, Texas  76161 | |
| **ATTORNEY FOR PLAINTIFF** | |
| **DIANE SCOTT HADDOCK** | |

| | |
|---|---|
| **Benjamin Walton** | *Via E-mail and CM/ECF electronic* |
| **Assistant Attorney General** | *transmission:* **Benjamin.Walton@oag.texas.gov** |
| General Litigation Division | |
| Office of the Attorney General | |
| 300 W. 15th Street | |
| Austin, Texas  78701 | |
| ---------- | |
| P.O. Box 12548 | |
| Austin, Texas  78711-2548 | |
| **ATTORNEY FOR DEFENDANT** | |
| **PATRICIA BACA BENNETT** | |

*/s/ M. Keith Ogle*
**M. KEITH OGLE**