IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DIANE SCOTT HADDOCK, | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:18-cv-00817-O |
| | § | |
| TARRANT COUNTY, TEXAS and | § | |
| PATRICIA BACA-BENNETT | § | |
|     Defendants | § | |

**TARRANT COUNTY'S REPLY TO "PLAINTIFF'S RESPONSE TO DEFENDANT TARRANT COUNTY'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT"**

TO THE HONORABLE JUDGE REED O'CONNOR:

**I. Summary: Tarrant County's Motion to Dismiss is well founded and should be granted.**

Tarrant County raises two legal questions that should be disposed of at this stage: (1) was Diane Haddock, a politically-appointed family law associate judge, subject to a patronage dismissal, such that her § 1983 First Amendment retaliation claim against Tarrant County is not plausible; and (2) did Diane state a claim under *Monell* against the County for the state judicial officers' conduct toward Diane and the state officials' termination of Diane's appointment? The seven family law judges in Tarrant County are elected state officials. The state judges alone have the power to appoint or end the appointment of their subordinate associate judges. Appointed associate judges are the state judges' policymakers and confidential employees, and patronage dismissals are allowed. Moreover, because the County does not control and is statutorily prohibited from influencing the state judicial officers' conduct and decisions regarding their associate judge appointments, the County is not liable under *Monell*. Diane's theory of County liability – based on allegations that, by her own concession, presented an isolated situation – is not facially plausible. Doc. 41 n.17. Accordingly, Diane's claims against the County should be dismissed with prejudice.

1

## II. Tarrant County stands on its Motion to Dismiss.

Tarrant County leaves it to this Court to determine the motive underlying four particular arguments in Diane's response,[1] but the County is constrained to reply briefly to each, as follows:

**(1)** Diane states that the County "blatantly misrepresents that there are three (3) required '*Monell* elements…'" Doc. 40, p. 6. Doubling down, she states, "This is not merely incorrect – it is a substantial misstatement of the law." *Id*. The County's motion correctly states and applies *Monell's* three elements. *See, e.g., Saenz v. Dallas Cnty. Cmty. Coll. Dist.*, 3:10-CV-742-O, 2011 WL 1935742, at *3 (N.D. Tex. May 16, 2011) (**O'Connor, J.**) ("Municipal liability under § 1983 requires proof of **three elements**: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (emphasis added)).

**(2)** Diane states that the County "inexplicably omits a significant part of the 12(b)(6) standard for review – that the Court must consider all of Diane's factual allegations as true – and fails to apply it." Doc. 40, pp. 2, 4, 20. But in its motion, the County acknowledges that "this Court must accept all ***well-pleaded* *facts*** in Diane's live pleading as true and view them in the light most favorable to Diane…" Doc. 36, pp. 3-4, 22. The County disagrees that this Court must accept as true all of Diane's "facts" when many are, in actuality, only "[c]onclusory allegations [and] legal conclusions." *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); *e.g.*, (1) whether Diane is a First Amendment policymaker, (2) whether the state judges are *Monell* policymakers, and (3) whether Tarrant County is "equally culpable" simply as an "employer" present questions of law. Diane's conclusory labeling on such issues does not control. *See, e.g.*, Doc. 36, p. 22.

---

[1] *See* Texas Lawyer's Creed § III, ¶ 10 ("I will not, without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety. I will avoid disparaging personal remarks or acrimony towards opposing counsel, parties, and witnesses.").

**(3)** Diane states that the County's § 1983 cases are "misleading." Doc. 40, p. 14. The County disagrees with this statement, which likely stems from Diane's attempt to simplify her case by premising the question of County liability on whether it was simply her employer, instead of utilizing *Monell's* framework.[2] For instance, Diane asserts that many of the County's § 1983 cases "have nothing whatsoever to do with public employees, at all…" Doc. 40, n.28 (asserting that she is an employee; whereas, the plaintiffs in those cases are inmates, murderers, crime victims, etc.).

The question in each of the fourteen § 1983 cases cited in her footnote 28 is not whether a plaintiff was a defendant's employee; rather, it was whether each governmental entity could be held liable under § 1983 for the conduct each plaintiff alleged, which is the core issue raised in the County's motion. Doc. 36, pp. 15-25. For example, *McMillian* involves whether a governmental actor is a county or state policymaker. *Id.*, p. 16, 21 n.6. *DeShaney*, *Griffith*, and *Morrow* concern when and whether a governmental entity has a duty to protect plaintiffs from third parties. *Id.*, pp. 24. *Hanna* involves pleading a civil rights conspiracy claim – involving a dismissal ground that Diane does not address in her response. *Id.*, p. 25. *Doe* is cited for the proposition that a § 1983 plaintiff cannot rely on respondeat superior liability. *Id.*, p. 22. Further, Diane does not address the law requiring the pleading of a widespread pattern, practice, or custom. *Id.*, pp. 24-25. In sum, the cited § 1983 cases control and should guide the Court to dismiss Diane's claims against the County.

**(4)** Diane accuses the County of "mischaracterize[ing]" facts. Doc. 40, n.30. This Court must accept as true Diane's well-pleaded *facts*. Doc. 36, p. 22. While the County's motion contains argument about Diane's allegations and draws inferences therefrom, the County did not mischaracterize the allegations. Rather, a disagreement exists about the correct application of the 12(b)(6) standard, and the applicable law, and the County contends that its analysis is correct.

---

[2] *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010) ("The **elements of the Monell test** exist to prevent a collapse of the municipal liability inquiry into a respondeat superior analysis.") (emphasis added).

### III. Tarrant County properly invoked Rule 12(b)(6).

Diane urges this Court to summarily deny the County's motion to dismiss. It should not be denied. The motion presents this Court with a viable "tool to 'weed out'" a "meritless lawsuit[]." *See In re 2014 Radioshack ERISA Litig.*, 165 F. Supp. 3d 492, 501 (N.D. Tex. 2016) (O'Connor, J.). Contrary to Diane's supposition, Doc. 40, pp. 3-4, 19, motions to dismiss are often utilized to dispose of § 1983 First Amendment retaliation claims. *See, e.g., Steen v. Crowley I.S.D.*, No. 4:15-cv-982-O, 2016 WL 10587720, at *6 (N.D. Tex. Oct. 19, 2016) (O'Connor, J.) (dismissing § 1983 employment case on a 12(b)(6) motion).[3] This case is no different.

### IV. *Monell* Element 3.  Diane was subject to a patronage dismissal.

To have plausibly asserted a § 1983 claim, Diane must have alleged a violation of her constitutional rights. *See Monell*, 436 U.S. at 694. She did not. Political allegiance can be demanded of family law associate judges, so Diane was subject to a patronage dismissal.

In its motion, the County explains why associate judges, like Diane, fall "within the exceptional class of public servants from whom political allegiance may be demanded." *See Garcia v. Reeves Cnty.*, 32 F.3d 200, 205 (5th Cir. 1995). Specifically, Diane was a policymaker and confidential employee for the judges she served. Doc. 36, pp. 6-15. Texas district court judges hearing family law matters are elected in partisan elections and should expect (1) to be able to appoint associate judges having the same or similar judicial, moral, ideological, and political philosophies and beliefs and (2) to demand loyalty from those associate judges. Texas's elected judges and their appointed associate judges have broad discretion on family law matters, such as

---

[3] *See also Borzilleri v. Mosby*, 874 F.3d 187, 189 (4th Cir. 2017); *Mumford v. Basinski*, 105 F.3d 264, 274 (6th Cir. 1997); *Duffie v. Wichita Cnty.*, 990 F. Supp. 2d 695 (N.D. Tex. 2013) (O'Connor, J.); *Hommel v. City of Long Beach*, 13-CV-3261 ADS ARL, 2014 WL 1010654, at *6 (E.D.N.Y. Mar. 14, 2014); *Sherman v. Dallas ISD*, 3:10–CV–1146-B-BH, 2011 WL 477500, at *9 (N.D. Tex. Jan. 24, 2011); *Simonelli v. Fitzgerald*, SA-07-CA-360, SA-08-CA-648, 2009 WL 3806489, at *9 (W.D. Tex. Oct. 22, 2009); *Finkelstein v. Barthelemy*, 678 F. Supp. 1255, 1266 (E.D. La. 1988); *Parker v. Barthelemy*, CIV. A. 91-3801, 1992 WL 116080, at *2 (E.D. La. May 6, 1992). And there are more.

custody, visitation, and possession, and they make and effectuate policy through their rulings and judicial acts.[4] *See, e.g., Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). Because of the vast discretion afforded to family district court judges – and the associate judges to whom they refer cases – their judicial rulings necessarily effectuate judicial policy on matters within the judges' and their associate judges' discretion.

The fact that Diane was appointed to serve all of the Tarrant County District Courts hearing family law matters, instead of one, did not remove Diane from being in a position in which political allegiance was required. *See Reeves Cnty.*, 32 F.3d at 205. As Diane alleges, six of the seven Tarrant County family law judges simultaneously come up for election, as in 2018. Doc. 34, ¶ 48. Consider if in 4, 8, or 20 years, candidates of a differing party or ideology were to sweep those six benches, and then 4, 8, or 20 years later, another set of candidates did the same. And so forth. Would the majority of winning judges be required to keep their predecessors' appointed associate judges? Because partisan elections impacted the composition of the courts that Diane served,[5] political allegiance was required of her.

With respect to Diane being a confidential employee, Texas law states that "[a] judge shall not disclose or use, for any purpose, unrelated to judicial duties, nonpublic information acquired in a judicial capacity." TEX. CODE JUD. CONDUCT, Canon 3(B)(11), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B. Diane was bound by this Canon. *See id.*, Canon 6(a)(2). For all cases or matters referred to Diane by any of the courts she served, she was a confidential employee with respect to the nonpublic information acquired in her judicial capacity.

---

[4] *See* ANTHONY CHAMPAGNE, *The Cycle of Judicial Elections: Texas as a Case Study*, 29 FORDHAM URB. L.J. 907, 917 & n.56 (2002) ("One recent analysis of 140 articles discussing the link between party affiliation and performance on the bench confirmed that 'party is a dependable measure of ideology on modern American courts.'")).

[5] *See id.* at 918 (discussing Republican defeat of 19 Democratic judges in Harris County, Texas).

Attempting to discourage this Court from ruling on the County's motion, Diane likens her judicially-appointed associate judge position to the apolitical road foreman position at issue in *Wiggins v. Lowndes County, Miss.*, 363 F.3d 387, 390-91 (5th Cir 2004). Diane argues that the analysis is too fact-specific to conduct now. Doc. 40, p. 13. However, courts – including this one – routinely analyze First Amendment retaliation claims, including patronage dismissal claims, at the 12(b)(6) stage. *See* n.2, *supra* (listing cases dismissing § 1983 employment claims at the 12(b)(6) stage). Per *Reeves County,* the analysis "requires the court to look at [the plaintiff's] job description." 32 F.3d at 205. The *Reeves County* court could not reach the question on a 12(b)(6) motion because the job description of the sheriff's-staff plaintiff was not of record. 32 F.3d at 205.

This Court, however, can easily reach the issue because Diane's job description is set forth in the Texas Family Code. *See* Doc. 36, pp. 9-13 (describing the statutory framework that gives associate judges vast policymaking authority for the matters referred to them and explaining how they are confidential policymakers). From the statutory "job description," this Court has a record to determine that associate judges, such as Diane, fall within the class of persons from whom political allegiance can be demanded. *See Reeves Cnty.*, 32 F.3d at 205. Because Diane's position was not protected by the First Amendment from a political dismissal, she has failed to state a First Amendment retaliation claim as a matter of law, and her claims should be dismissed. Alternatively, to the extent that this Court is required to engage in a *Pickering* analysis, while such is frequently done at the summary judgment stage (*see, e.g., Aucoin v. Haney*, 306 F.3d 268, 274-77 (5th Cir. 2002)), it can be performed here at the 12(b)(6) stage given the facts Diane has pleaded and her high-ranking confidential and policymaking position as an appointed associate judge.[6]

---

[6] *See, e.g.*, *Borzilleri*, 874 F.3d at 194-95 ("Once we have found that the *Elrod-Branti* policymaker exception applies, the *Pickering* balance generally tips in favor of the government because of its overriding interest in ensuring an elected official's ability to implement his policies through his subordinates."); *Hagin v. Quinn*, 867 F.3d 816, 826 (7th Cir. 2017) ("Plaintiffs' First Amendment retaliation claims are barred by the policymaking corollary to the *Pickering*

6

Diane may be upset that her appointment ended before she had hoped, Doc. 34, ¶ 21, but she did not have a lifetime appointment. Her appointment was always subject to a majority vote of the elected family law judges in Tarrant County. *See* TEX. FAM. CODE ANN. § 201.004(b).

> Elections mean something. Majorities bestow mandates. Elected [judges] translate those mandates into policies. And [associate judges] implement those policies. It is therefore entirely proper for an electoral victor to assess whether [he or] she has confidence in those charged with fulfilling [his or] her "duty to the electorate and the public at large to ensure that [his or her] espoused policies are implemented." [citation omitted] … It may often be the case that those who served in the *ancien régime* are resistant to a change in the established way of doing things. To entrench former policymakers may, in such circumstances, deprive democratic politics of its necessary adaptability.

*See Borzilleri*, 874 F.3d at 192. Whether the County had wanted Diane to remain appointed or not, the County was prohibited from influencing the state judges' decisions and had no ability or duty to protect Diane from the state judges' conduct or appointment decision-making. *See, e.g.,* TEX. LOC. GOV'T CODE ANN. § 151.004. Diane has not pleaded a plausible violation of the First Amendment, so this action should be dismissed with prejudice. *See Duffie*, 990 F. Supp. 2d at 723.

### V. *Monell* Element 1.   There is no plausible County policymaker.

Alternatively, dismissal of the County is warranted because Diane failed to plead facts of *Monell's* first and second elements: (1) a County policymaker and (2) a County policy or custom.

On the first element, whether one is a *Monell* policymaker is a question of law, *City of St. Louis v. Prapotnik*, 485 U.S. 112, 125-26 (1988), and Diane's allegations of who is a County policymaker need not be taken as true. *See Jakomas v. McFalls*, 229 F. Supp. 2d 412, 428-30 (W.D. Pa. 2002) ("We have no difficulty deciding … that Judge McFalls was not acting as a policymaker for the County when he discharged his staff."). Diane argues that the state judges

---

analysis."); *Simonelli*, 2009 WL 3806489, at *8 (granting 12(b)(6) motion after *Pickering* balancing); *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("No panel could decide that Federal Rule of Civil Procedure 12(b)(6) never applies to any *Pickering* balancing case …."); *Hall v. Ford*, 856 F.2d 255 (D.C. Cir. 1988) (apply *Pickering* at 12(b)(6) stage).

7

were County policymakers under *Monell* because the County "delegated" policymaking authority to those state officers. Doc. 34, ¶¶ 32, 56. This argument should be rejected, as it was in *Jakomas*, 229 F. Supp. 2d at 428 n.5, because (1) the state district judges had exclusive statutory authority (that the County did not have and, therefore, did not delegate) to appoint/terminate Diane and (2) the County was prohibited from influencing the state judges.

In its motion, the County set out the separation-of-powers argument for why it is not liable for the state judges' conduct. Doc. 36, pp. 15-21. Instead of addressing the issue, Diane dismisses the seminal U.S. Supreme Court case as a case about a murderer. Doc. 40, p. 18 (relegating to a footnote *McMillian v. Monroe Cnty.*, 520 U.S. 781 (1997)). Diane's allegations and argument that the County "delegated" authority over the associate judges is legally incorrect. Unlike the County's Domestic Relations Office, which by statute can either be administered by the ***County's*** Commissioner's Court or Juvenile Board (*see* TEX. FAM. CODE ANN. § 203.003), the Legislature gave no similar authority to the County over Diane's appointment, which was controlled and administered solely by the ***state*** judges she served (*see* TEX. FAM. CODE ANN. §§ 201.003-.004).

Regarding her contention that the County held the "power of the purse" to coerce the state judges to retain Diane or treat her differently, Doc. 36, pp. 17-18, none of those conclusory arguments are fact, and none circumvent Texas law separating the judicial and legislative departments. *See* TEX. CONST. art II, § 1; *Henry v. Cox*, 520 S.W.3d 28, 38 (Tex. 2017). As discussed in the motion to dismiss, the Commissioners Court only has legislative budgetary power over associate judge positions; whereas, the state judiciary, and not the County, has the sole power to appoint/terminate associate judges and to govern state judicial conduct. Doc. 36, pp. 19-20. In fact, the Legislature expressly forbids the commissioners court or a member of the court from "attempt[ing] to influence the appointment of any person" appointed by district judges, *see* TEX.

LOC. GOV'T CODE ANN. § 151.004, and this would necessarily include the ***attempted*** influence over state officers by means of budgetary coercion. *See, e.g., Henry*, 520 S.W.3d at 37.[7] Thus, the state judges are *Monell* policymakers regarding their conduct and appointment powers over their associate judges. *See* Doc. 36, n.6 (counties not liable under *Monell* for judges' hiring decisions).

Were the County to attempt to influence the state district court judges' conduct or appointments regarding their associate judges via an improper County disciplinary, administrative, or legal action, the state district judges could seek to exercise their supervisory authority over the County Commissioners Court. *See* TEX. CONST. art V, § 8; *Henry,* 520 S.W.3d at 36. Under *Monell*, the state district judges are the ***final*** policymakers over their associate judge appointments.

### VI.  *Monell* **Element 2.**  **There is no plausible County policy/custom.**

In her response to the judge's motion (which also argues against the County), Diane states,

> [T]he evidence in later stages of the case will show that no Tarrant County associate judge … has been fired on political loyalty grounds in the history of Tarrant County's associate judge program. … Not a single time, before Diane, have the District Judges or Tarrant County acted with such reckless disregard for the constitutional rights of an associate judge-employee.

Doc. 41, p. 10 n.17. This concession disposes of Diane's § 1983 claim against the County.

Notably, Diane has not pleaded an express County policy that *itself* violated her constitutional rights.[8] Doc. 34, ¶ 68. Rather, she has pleaded (1) violations of express County policy prohibiting discrimination and requiring investigation of same and (2) violations of unwritten customs. *Id.* Both amalgamations require allegations of a "persistent widespread practice of [county] officials or employees which although not authorized by officially adopted and

---

[7] *See also Deaton v. Montgomery Cnty.*, 989 F.2d 885, 887 (6th Cir. 1993) (County policy was not "moving force" behind strip search policy at jail where "County erected the facility and maintained the physical plant and the City managed and operated the facility"); *Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998) (dismissing parish in jail policy suit where "[p]arish's responsibility to the jail [wa]s limited to funding of the jail").

[8] *See, e.g., Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (to prevail under an express policy theory, a plaintiff must identify specific language in an official policy that explicitly violates a person's constitutional rights).

9

promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984). Diane needed to have pleaded "similarity, specificity, and sufficiently numerous prior incidents," Doc. 36, pp. 24-25, which Diane admits she cannot, Doc. 41, n.17. Indeed, Diane's admission that her case presents an isolated situation is fatal to her claim against the County. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) ("Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy."). Having failed to plead a policy or custom, and admittingt an isolated situation, Diane's § 1983 claim should be dismissed. *See, e.g., Sherman*, 2011 WL 477500, at *9 (granting 12(b)(6) motion on inadequate policy/custom allegations).

Furthermore, the County cannot be liable for failing to protect Diane from the state judges – whom the County was not permitted to influence. If Diane thought that anyone was creating a hostile work environment through a violation of, or a request to violate, a judicial canon, *see, e.g.*, Docs. 40 n.16, 41 n.35, her recourse was not through the County; it was through the state judiciary (*i.e*., the State Commission on Judicial Conduct). Doc. 36, p. 17. Because no duty existed for the County to "protect" Diane from the state judges' conduct or termination, the County could not, as a matter of law, have violated a custom or policy in not protecting her from an alleged hostile work environment or patronage dismissal at the hands of those state officers. *See* Doc. 36, pp. 22-25.

### VII. Conclusion and Prayer for Relief

Tarrant County requests that this Court grant its Motion to Dismiss Plaintiff's Second Amended Complaint; deny Diane Haddock's tacked-on request for leave to amend, *see* N.D. TEX. L. CIV. R. 15.1; *England v. JPMorgan Chase Bank, N.A*., 4:14-CV-183-Y, 2014 WL 12588508, at *2 (N.D. Tex. June 19, 2014) (Means, J.) (rejecting "boilerplate" request for leave); and dismiss ***with prejudice*** Diane's claims against Tarrant County, *see Duffie*, 990 F. Supp. 2d at 723.

Respectfully submitted,

*/s/ M. Keith Ogle*

**M. KEITH OGLE**
State Bar No. 24037207
Assistant Criminal District Attorney
**DAVID K. HUDSON**
State Bar No. 10151150
Assistant Criminal District Attorney

SHAREN WILSON
CRIMINAL DISTRICT ATTORNEY
TARRANT COUNTY, TEXAS

Tarrant County Criminal District Attorney's Office
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor
Fort Worth, Texas 76196
817-884-1233 - Telephone
817-884-1675 – Facsimile
E-Mail: mkogle@tarrantcountytx.gov
E-Mail: dkhudson@tarrantcountytx.gov

**ATTORNEYS FOR DEFENDANT
TARRANT COUNTY, TEXAS**

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing document was served upon the following parties in accordance with the provisions of Rule 5, FED. R. CIV. P., on June 11, 2019:

| | |
|---|---|
| **Walter L. Taylor**<br>**The Hart Law Firm**<br>6630 Colleyville Blvd., Suite 100<br>Colleyville, Texas  76034<br>----------<br>P.O. Box 164067<br>Fort Worth, Texas  76161<br>**ATTORNEY FOR PLAINTIFF**<br>**DIANE SCOTT HADDOCK** | *Via E-mail and CM/ECF electronic transmission: Wtaylor@thehartlawfirm.com* |
| **Benjamin Walton**<br>**Assistant Attorney General**<br>General Litigation Division<br>Office of the Attorney General<br>300 W. 15th Street<br>Austin, Texas  78701<br>----------<br>P.O. Box 12548<br>Austin, Texas  78711-2548<br>**ATTORNEY FOR DEFENDANT**<br>**PATRICIA BACA BENNETT** | *Via E-mail and CM/ECF electronic transmission***: Benjamin.Walton@oag.texas.gov** |

_____
**M. KEITH OGLE**