# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **DIANE SCOTT HADDOCK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:18-cv-00817-O** |
| | § | |
| **TARRANT COUNTY, TEXAS,** | § | |
| **PATRICIA BACA-BENNETT,** | § | |
| **KENNETH EARL NEWELL, JESUS** | § | |
| **NEVAREZ, JR., HONORABLE JUDITH** | § | |
| **WELLS, JEROME S HENNIGAN,** | § | |
| **JAMES B MUNFORD, and ALEX KIM,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## ORDER

Before the Court are Defendant Tarrant County's ("County") Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 36) pursuant to Rule 12(b)(6) filed May 6, 2019, and Defendants Patricia Baca-Bennett, Jerome S. Hennigan, Alex Kim, James B. Munford, Jesus Nevarez, Jr., Kenneth Earl Newell, and Judith Wells' (collectively "Defendant Judges") Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction (ECF No. 38) pursuant to Rule 12(b)(6) and Rule 12(b)(1) filed May 10, 2019.[1] Having considered the motions, responses, replies, pleadings, and applicable law, the Court: **GRANTS** Defendant Judges' motion to dismiss pursuant to Rule 12(b)(1) in part, **GRANTS** Defendant Judges' motion to dismiss pursuant to Rule 12(b)(6), and **GRANTS** Defendant Baca-Bennett motion to dismiss based on qualified immunity. Finally, the Court **GRANTS** the County's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.

---

[1] Defendant Baca-Bennett individually also moves for judgment on the basis of qualified immunity.

## I.      FACTUAL BACKGROUND

The following facts are drawn from Plaintiff's Second Amended Complaint, which is the live pleading. *See* ECF No. 34, Sec. Am. Compl.

### A.  The Parties

Plaintiff Diane Scott Haddock was a family court associate judge in Tarrant County, Texas and filed this lawsuit on October 3, 2018 against Tarrant County, a local governmental entity organized under the Texas Constitution, and Defendant Judge Patricia Baca-Bennett ("Baca-Bennett"), individually and in her official capacity as a district judge. Plaintiff also sues Judge Kenneth Earl Newell ("Newell"), Judge Jesus Nevarez, Jr. ("Nevarez"), Judge Judith Wells ("Wells"), Judge Jerome S. Hennigan ("Hennigan"), Judge James B. Munford ("Munford"), and Judge Alex Kim ("Kim") all in their official capacities as district judges (collectively the district judges, including Patricia Baca-Bennett, "Defendant Judges"). She alleges all of the defendants fired her in violation of her constitutional rights and are therefore liable to her pursuant to 42 U.S.C. § 1983.

### B.  Facts

Plaintiff served as an appointed associate judge from January 1999 to January of 2019. Sec. Am. Compl. 7. Plaintiff served all seven family district court judges who supervised her. *Id*. at 35. Tarrant County paid Plaintiff's salary; offered her health and life insurance; originally provided her with employee orientation, employee handbook, and a Tarrant County E-mail address; and provided facilities, technology, equipment, and security to Plaintiff. *Id*. at 28. An associate judge in Texas has the power to "conduct hearings, compel production of relevant evidence, rule on the admissibility of evidence, issue summonses, examine witnesses, make findings of fact, formulate conclusions of law, and enter final orders, and – at times – even try cases on the merits." *Id*. at 30.

2

As an associate judge, Plaintiff had no employees, no budget, no authority over when others work or do not work or how any other person's time off is characterized. *Id*. at 30.

Throughout 2018, Plaintiff was allegedly subjected to "badgering, threats, back-biting, undermining and maligning" for (1) her refusal to patronize a judicial candidate that Defendant Judge Baca-Bennett endorsed and supported, (2) her refusal to stop her husband from supporting said judicial candidate's opponent, and (3) her refusal to stop her husband from engaging in political speech advocating for the Second Amendment. *Id*. at 6; *see id*. at 7–23. Plaintiff first called Ms. Tina Glenn, Tarrant County's Director of Human Resources, who instructed Plaintiff that if anything else happened, to let HR know. *Id*. at 41. The behavior continued, so Plaintiff filed a written complaint, and followed up by phone with Ms. Glenn who told Plaintiff that she "can't make people be nice." *Id*. Subsequently, Judge Glen Whitley called Plaintiff and left a message. *Id*. Neither Ms. Glenn nor Judge Whitley indicated that Plaintiff's position was exempt from First Amendment protection. *Id*. On or about May 18, 2018, Plaintiff delivered a letter to Judge Glen Whitley and to Tarrant County's HR Director detailing the conduct that had taken place. *Id*. Tarrant County took no action in response to the previously stated notifications. *Id*. at 43. On October 3, 2018, Plaintiff filed this lawsuit asserting her First Amendment rights had been violated, and on January 7, 2019, Plaintiff's employment was terminated. *Id*. at 23. Plaintiff was notified of her termination by Judge Newell and was given no reason for the termination, but Plaintiff received an Order of Termination which was signed by a majority of the seven Tarrant County Family Court District Judges the previous Friday, January 4, 2019. *Id*.

## II.   LEGAL STANDARDS

### A.  Federal Rules of Civil Procedure 8(a)

Federal Rule of Civil Procedure 8(a) requires a plaintiff's pleading to include "a short and

3

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it
demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If
a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims
under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may
be granted." Fed. R. Civ. P. 12(b)(6).

**B. Federal Rule of Civil Procedure 12(b)(6)**

To defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its
face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility
standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that
a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint
pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line
between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at
557).

In reviewing a Rule 12(b)(6) motion, courts must accept all well-pleaded facts in the
complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm
Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). Courts are not bound to accept legal
conclusions as true, and only a complaint that states a plausible claim for relief survives a motion
to dismiss. *Iqbal*, 556 U.S. at 678. When there are well-pleaded factual allegations, courts assume

their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* at 679. However, they do not accept as true "conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Secs. Corp. v. INSpire Ins. Sols, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations and internal quotation marks omitted). Likewise, a court may consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dead Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

## C. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*. When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*.

5

The Fifth Circuit recognizes a distinction between a "facial attack" and a "factual attack" upon a complaint's subject matter jurisdiction. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000). "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Id*. (citation omitted). If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Regardless of the attack, "[t]he plaintiff constantly bears the burden of proof that jurisdiction does exist." *Rodriguez*, 992 F. Supp. at 879 ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.") (citations omitted).

### D.  Section 1983 Claims

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id*. To state a claim under § 1983, a plaintiff must allege facts that show: (1) Plaintiff has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

In their individual capacity, Government officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness

of their conduct was clearly established at the time." *District of Columbia v. Wesby*, —U.S.—, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "The plaintiff has the burden to point out the clearly established law." *Clarkston v. White*, —F.3d—, 2019 WL 5485558 (5th Cir. 2019) (citing *Delaughter v. Woodall*, 909 F.3d 130, 139 (5th Cir. 2018)). "Clearly established law is determined by controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id*. (internal quotation marks omitted). "This means the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right, although it is not necessary for controlling precedent to have held that the official's exact act was unlawful." *Id*. (citing *Delaughter*, 909 F.3d at 139–40) (internal quotation marks omitted). Ultimately, the "central concern is whether the official has fair warning that his conduct violates a constitutional right." *Id*. (citing *Delaughter*, 909 F.3d at 140) (internal quotation marks omitted).

## III.   ANALYSIS

The County and Defendant Judges have moved to dismiss Plaintiff's § 1983 claim.[2]  The Court first considers whether Judge Baca-Bennett, sued in her individual capacity, is entitled to qualified immunity.

### A.  Judge Baca-Bennett and Qualified Immunity

---

[2] To the extent that Plaintiff is suing the Defendant Judges in their official capacities, an official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Thus, Plaintiff's allegations against Defendant Judges in their official capacities are claims against Tarrant County. *See id.*

Judge Baca-Bennett is entitled to qualified immunity because at the time of her termination, Plaintiff has failed to show that clearly established law prevented terminating the employment of an associate judge for patronage reasons.

No Fifth Circuit decision has decided whether a Texas associate judge was subject to a patronage dismissal. While Plaintiff is not required to identify a case precisely on point, she must show the law has adequately defined the contours of the right such that policy makers were sufficiently on notice. *Zulema Longoria v. San Benito Indep. Sch. Dist. et al*, —F.3d—No. 18-41060 2019 WL 5687512, at *3 (5th Cir. 2019) (citing *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 618 (5th Cir. 2004); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "If, at the time of the events underlying the litigation, insufficient precedent existed to provide [defendants] with fair warning that the defendants' conduct violated the First Amendment, the defendants are entitled to qualified immunity." *Zulema Longoria*, 2019 WL 5687512, at *3 (quoting *Jackson v. Ladner*, 626 F. App'x 80, 88 (5th Cir. 2015) (internal quotations omitted).

The Fifth Circuit has held assistant district attorneys, county road managers, and school superintendents are subject to patronage dismissals. *See generally Gentry v. Lowndes County*, 337 F.3d 481 (5th Cir. 2003) (county road manager); *Aucoin v. Haney*, 306 F.3d 268 (5th Cir. 2002) (assistant district attorney); *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988 (5th Cir. 1992) (school superintendent). And the Sixth Circuit has held a court referee, whose job description is similar to that of an associate judge, is subject to patronage dismissal. *Mumford v. Basinski*, 105 F.3d 264, 273 (6th Cir. 2997). While no case is on point, the court referee position comes close to the associate judge position and it provides authority to terminate Plaintiff in this context.  But in any event, no case is close to providing that the position of an associate judge is different than these such that it was clearly established that an associate judge could not be terminated on this

basis. Accordingly, Judge Baca-Bennett is entitled to qualified immunity and Plaintiff's claims against Judge Baca-Bennett in her individual capacity are hereby **DISMISSED** with prejudice.

## B.  Judges in Their Official Capacity

The Court next considers the motion to dismiss filed by the Defendant Judges in their official capacity. They have moved to dismiss Plaintiff's claims for lack of subject matter jurisdiction under the Eleventh Amendment and because she has failed to state a claim under Rule 12(b)(6). They do not support their subject matter jurisdiction motion with evidence and thus present a facial attack. *See generally* Defs.' Mot. to Dismiss, ECF No. 38. The Court therefore presumes Plaintiff's allegations in her complaint against Defendant Judges to be true and must decide whether she has correctly alleged a basis for subject matter jurisdiction. *Rodriguez*, 992 F. Supp. at 878.

### 1.   Eleventh Amendment

The Eleventh Amendment to the United States Constitution bars private suits in federal court against states—including state agencies—unless the state has waived, or Congress has abrogated, the state's sovereign immunity. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *see also* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). Section 5 of the Fourteenth Amendment to the United State Constitution "authorizes Congress to create a cause of action through which the citizen may vindicate his Fourteenth Amendment rights." *United States v. Georgia*, 546 U.S. 151, 158 (2006) (citation omitted). "This enforcement power includes the power to abrogate state sovereign immunity by authorizing private suits for damages against the States." *Id*. at 158–59.

9

An exception to immunity exists when a plaintiff simply seeks to prohibit a state official from violating federal law. The *Ex parte Young* exception to sovereign immunity provides that "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. The doctrine is limited to that precise situation, and does not apply when the state is the real, substantial party in interest." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011); *see also Ex parte Young*, 209 U.S. 123 (1908). According to *Virginia Office*, "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." 563 U.S. at 256 (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 636 (2002) (internal quotations omitted)).

If the Defendant Judges are employees of the State, it appears Plaintiff concedes she is not entitled to recover damages against them because of sovereign immunity as she does not contest this proposition in her briefing. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss 3, ECF No. 41 (asserting she is entitled to recover equitable reinstatement). And the Defendant Judges do not appear to contest that she may, consistent with the Eleventh Amendment, be entitled to equitable reinstatement, as they do not respond to it in their Reply. *See generally* Def. Judges' Reply, ECF No. 43. The County's Motion is **GRANTED** because, as discussed in response to the County's motion below, the Defendant Judges are State officials so that Plaintiff may not recover money damages pursuant to the Eleventh Amendment. And, for the reasons that will be addressed next, Plaintiff has also failed to state a claim for retaliatory discharge as required by Rule 12(b)(6).

2.  Failure to State a Claim

The Defendant Judges argue that Plaintiff's claim for retaliatory discharge fails because

she could be removed at will as a patronage and confidential employee. "It is well settled that the Constitution prohibits a government employer from discharging or demoting an employee because the employee supports a particular political candidate . . . ." *Griggs v. Chickasaw County*, 930 F.3d 696, 703 (5th Cir. 2019) (quoting *Moss v. Harris County. Constable Precinct One*, 851 F.3d 413, 421 (5th Cir. 2017)) (internal quotations omitted). An exception exists however for employees who hold policy making or confidential positions. *See Branti v. Finkel*, 445 U.S. 507, 517–18 (1980).

"To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) she suffered an adverse employment action; (2) she spoke as a citizen on a matter of public concern; (3) her interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Id*. (citing *Moss*, 851 F.3d at 420–21 (quoting *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016))). The failure to establish each element dooms Plaintiff's claim. *See Moss*, 851 F.3d 420–21 (affirming a finding that speech was not protected because the plaintiff failed to satisfy the second element); *Wilson v. Tregre*, 787 F.3d 322, 325–326 (5th Cir. 2015) (holding that speech was not protected because the plaintiff failed to satisfy the third element) *Nixon v. City of Houston*, 511 F.3d 494, 499, 501 (5th Cir. 2007) (finding that the speech was not protected because the plaintiff failed to satisfy the third element). In this case, all defendants contend Plaintiff's claim fails at the third element: the balance between the government's interests and Plaintiff's interests.

Courts apply a case-by-case balancing test and "compare 'an employee's interest in commenting upon matters of public concern' and 'the interest of the State in promoting the efficient delivery of public services.'" *Id*. (citing *Wiggins v. Lowndes County.*, 363 F.3d 387, 390 (5th Cir. 2004)). "The key factor in the balancing test is whether political allegiance is an

appropriate requirement for the effective performance of the public office involved." *Id.* (citing *Wiggins*, 363 F.3d at 390) (internal quotations omitted). The "court more readily finds that the government's interests outweigh the employee's interests where the employee is a policymaker for purposes of the First Amendment." *Id.* (citing *Wiggins*, 363 F.3d at 390) (internal quotations omitted).

A policymaker is "an employee whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation, or policy determinations made by supervisors." *Wiggins*, 363 F.3d at 390. The court should also consider "whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Id.* (citing *Elrod v. Burns*, 427 U.S. 347, 368 (1976)). Additionally, "[a]n employee is confidential if he or she stands in a confidential relationship to the policymaking process, e.g., as an advisor to a policymaker, or if he or she has access to confidential documents or other materials that embody policymaking deliberations and determinations," or if he or she is in a position to subject an elected official to personal liability. *Id.* (citing *Stegmaier v. Trammell*, 597 F.2d 1027, 1040 (5th Cir. 1979)).

In this case, the Defendant Judges contend that Plaintiff held a policymaking and confidential position as an associate judge for which their trust in the associate judge's loyalty was required. While the Fifth Circuit's decisions have not dealt with the status of an associate judge, it has opined on other positions and described the general parameters of such high-level policymaking and confidential employment.

In *Aucoin v. Haney*, the Fifth Circuit held that the assistant district attorney position required political loyalty and was subject to patronage dismissal, reasoning that an assistant district

attorney was vested "with broad discretionary powers." 306 F.3d at 275 (relying on the state constitution, which stated the assistant district attorney had the same responsibilities as the district attorney, that assistant district attorneys were appointed by the district attorney and served at the pleasure of the district attorney, and that the actions of an assistant district attorney could bind the state). Two other cases illustrate contrasting positions that were held to require or not require political loyalty, with the result that the political officials could or could not terminate employees for their political activity, respectively. *Compare Gentry*, 337 F.3d at 487–88 (holding that a county road manager, the second highest non-elected county management position, may be fired for political opposition), *with Wiggins*, 363 F.3d at 391–92 (holding that a county road foreman merely implemented policy and may not be terminated for political reasons). Other circuits have addressed this balancing test and held various positions required political loyalty and were not protected from political dismissals under the First Amendment.[3]

Moreover, the Court finds persuasive the Sixth Circuit's decision in *Mumford v. Basinski*, which concluded that a court referee was an inherently political position not protected from political patronage termination by the First Amendment. 105 F.3d at 273. The court referee's powers included "the conduct of hearings on the matters referred to him, the issuance of subpoenas,

---

[3] *Aucoin*, 306 F.3d at 275 ("*See, e.g.*, *Butler v. New York State Dept. of Law*, 211 F.3d 739, 741 (2d Cir. 2000) (Deputy Bureau Chief of the Litigation Department at the New York State Department of Law); *Biggs v. Best, Best & Krieger*, 189 F.3d 989 (9th Cir. 1999) (attorney with private law firm that performed services of city attorney); *Bavaro v. Pataki*, 130 F.3d 46, 47 (2d Cir. 1997) (associate counsel and assistant counsel in the New York State Department of Health, Division of Legal Affairs, Bureau of Professional Medical Misconduct); *Fazio v. City & County of San Francisco*, 125 F.3d 1328 (9th Cir. 1997) (assistant district attorney); *Gordon v. County of Rockland*, 110 F.3d 886, 890-892 (2d Cir.) (assistant county attorneys), *cert. denied*, 522 U.S. 820 . . . (1997); *Monks v. Marlinga*, 923 F.2d 423 (6th Cir. 1991) (assistant prosecuting attorneys); *Williams v. City of River Rouge*, 909 F.2d 151 (6th Cir. 1990) (city attorney); *Livas v. Petka*, 711 F.2d 798 (7th Cir. 1983) (assistant state attorney to a public prosecutor); *Mammau v. Ranck*, 687 F.2d 9 (3d Cir. 1982) (assistant district attorney); *Ness v. Marshall*, 660 F.2d 517 (3d Cir. 1981) (city solicitor and assistant city solicitor); *Newcomb v. Brennan*, 558 F.2d 825 (7th Cir. 1977) (deputy city attorney), *cert. denied*, 434 U.S. 968 . . . (1977); *Bauer v. Bosley*, 802 F.2d 1058 (8th Cir. 1986) (staff legal assistant in office of clerk of circuit court), *cert. denied*, 481 U.S. 1038 . . . (1987).").

13

the swearing and examination of witnesses, and (unless otherwise specified in the order of reference) the promulgation of evidentiary rulings and the entry of certain pretrial, discovery, temporary restraining, and other orders necessary to regulate the proceedings," all without ratification of the supervisory judge. *Id.* at 272 (citing Ohio R. Civ. P. 53(C)(2) & (3)). The court further stated that the referee's decisions were otherwise "mere recommendations which [became] effective only upon adoption by the court." *Id.* (citing Ohio R. Civ. P. 53(E)(4)(a)).

The court in *Mumford* reasoned that the inherent duties of a court referee entailed a relationship of confidence between the referee and the judges he served, and it pointed out that the "referee [was] privy to confidential litigation materials and internal court communications in the discharge of his duties, and further maintain[ed] a personal confidential relationship with the judge(s) which he serve[d]." *Id.* (citing *Blair v. Meade*, 76 F.3d 97, 101 (6th Cir. 1996) and *Balogh v. Charron*, 855 F.2d 356, 356 (6th Cir. 1988)). Further, the court stated that the "referee effectively ma[d]e policy for, or suggest[ed] policy to, the court on each occasion that he resolve[d] a dispute in the court's name or recommend[ed] a disposition to a judge." *Id.* Concluding that a supervising judge needed to be confident in the referee's judgment capabilities, and that the confidentiality of the relationships arising as a result of judicial discussions was unquestionable, the court found that the referee's political ideology, associations, and activities could influence a judge's assessment of a person's suitability for the position as his referee. *Id.*

In this case, the duties for an associate judge can be found in the Texas Family Code, which provides:[4]

> **Cases That May Be Referred**. (a) . . . a judge of a court may refer to an associate judge any aspect of a suit over which the court has jurisdiction under this title . . .

---

[4] Because the duties of an associate judge are set out in the Texas Family Code, the Court looks to the statute for the relevant job description.

> **Powers of Associate Judge**. (a) Except as limited by an order of referral, an associate judge may: (1) conduct a hearing; (2) hear evidence; (3) compel production of relevant evidence; (4) rule on the admissibility of evidence; (5) issue a summons . . . (6) examine a witness; (7) swear a witness for a hearing; (8) make findings of fact on evidence; (9) formulate conclusions of law; (10) recommend an order to be rendered in a case; (11) regulate all proceedings in a hearing before the associate judge; (12) order the attachment of a witness or party who fails to obey a subpoena; (13) order the detention of a witness or party found guilty of contempt, pending approval by the referring court . . . (14) without prejudice to the right to a de novo hearing before the referring court . . . render and sign: (A) a final order agreed to in writing as to both form and substance by all parties; (B) a final default order; (C) a temporary order; or (D) a final order in a case in which a party files an unrevoked waiver . . . that waives notice to the party of the final hearing or waives the party's appearance at the final hearing; (15) take action as necessary and proper for the efficient performance of the associate judge's duties; and (16) render and sign a final order if the parties waive the right to a de novo hearing before the referring court . . . in writing before the start of a hearing conducted by the associate judge.

Tex. Fam. Code §§ 201.005; 201.007. The job duties of the referee in *Mumford* are very similar to those of a Texas associate judge. While Plaintiff argues that her case is distinguishable from *Mumford* in that she served all seven district judges rather than just one, that is insufficient to distinguish the Sixth Circuit's reasoning. A court referee served at the pleasure of the appointing judge; and in this case, an associate judge does the same, and if she serves multiple courts, she serves at the pleasure of those courts she serves.[5] Just as in *Mumford*, the associate judge's inherent duties, listed above, show a relationship of confidence between the associate and district judges. *See* Tex. Fam. Code § 201.007. Implicit to these statutory job duties, an associate judge is privy to both confidential litigation materials and internal court communications regarding cases. Necessarily, an associate judge suggests policy to the district judge on each occasion that she

---

[5] TEX. FAM. CODE §§ 201.001(d) ("Appointment. . . . if an associate judge serves more than one court, the associate judge's appointment must be made with the unanimous approval of all the judges under whom the associate judge serves."); 201.004(b) ("Termination of Associate Judge. . . . The employment of an associate judge who serves more than two courts may only be terminated by a majority vote of all the judges of the courts which the associate judge serves.").

recommends an order to be rendered in a case, and she effectively makes policy when she renders and signs a final order. As a consequence, the district judges that supervise the associate judges must "be convinced that the judgment capabilities of the [associate judge], and the confidential relationships that arise as a result of the intimate judicial and quasi-judicial discussion, are unquestionable." *Id*. at 272. Therefore, an associate judge's political ideology, associations, and activities may rationally influence a district judge's assessment of the individual's suitability for a position as an associate judge. Accordingly, Plaintiff's previous position as an associate judge was subject to patronage dismissal.

The Defendant Judge's motions to dismiss for failure to state a claim is therefore **GRANTED**, and Plaintiff's § 1983 claims against Defendant Judges are **DISMISSED**.

### C. Defendant Tarrant County

The County moves to dismiss Plaintiff's § 1983 claims arguing that Plaintiff failed to state a constitutional deprivation under the First Amendment because she was a policymaker and held a position of confidence. The County's motion on this basis is granted for the same reasons set out above pursuant to the Defendant Judges' Rule 12(b)(6) Motion. The County also argues that as a matter of law Defendant Judges were not acting as county policymakers, and Plaintiff is impermissibly seeking to hold the County vicariously liable for the District Judges' actions.

Section 1983 does not allow a municipality to be held vicariously liable based on a theory of respondeat superior. 42 U.S.C. § 1983; *see Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). Rather, a municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of her constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). The Fifth Circuit has consistently held that three elements must be proven to establish liability against a municipality under *Monell*: "(1) an official policy

(2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017) (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001))); *see also Bowden v. Jefferson County*, 676 F. App'x. 251, 253 (5th Cir. 2017).

Plaintiff summarizes her allegations relating to First Amendment violations in response to the Defendant County's motion to dismiss, as follows:

> Throughout 2018, Defendant Tarrant County – [Plaintiff] Diane's primary employer – consciously and repeatedly refused to protect Diane from First Amendment retaliation. Tarrant County refused to protect Diane even though [Defendant Judge] Baca-Bennett's retaliatory activity was overt and public. It refused despite reports from Diane that it was occurring, illegal, and debilitating, and despite Diane's plea for Tarrant County's intervention. Tarrant County's policymakers refused to enforce Tarrant County's own written policy, which promises to protect all Tarrant County employees from First Amendment retaliation by elected officials or persons who regularly do business with Tarrant County.[] Alternatively, Tarrant County has an unwritten policy and custom of excluding its associate judge-employees from First Amendment protection.
>
> On October 3, 2018, Diane filed this lawsuit asserting her First Amendment rights. Baca-Bennett and Tarrant County were served with process on October 10, 2018 and October 11, 2018. Less than ninety (90) days later, Diane's employment was terminated by a bare majority of the family court district judges. Diane's Second Amended Complaint alleges her termination was a further violation of her First Amendment rights, either because Baca-Bennett's campaign to get Diane fired was ultimately successful, or because the district judges – with Tarrant County's acquiescence and support – retaliated against Diane for filing this lawsuit. Tarrant County agreed with and shared the judges' unlawful motives and unconstitutional actions.

Pl.'s Resp. to County Def.'s Mot. to Dismiss 6–7, ECF No. 40 (internal citation omitted).

In support of their motion to dismiss, Defendant Tarrant County argues:

> "On *Monell's* policymaker element, the County cannot be held liable for the acts of independently-elected state district judges. On the [policy or custom] *Monell* element, Diane has not identified a plausible County policy or custom at issue, and Diane has not and cannot state a plausible claim based on the County failing to protect Diane from state district judges – persons who the County does not control. [On the third *Monell* element], Diane has not pleaded – and cannot plead – a viable

17

First Amendment violation because associate judges fall within the exceptional class of public servants of whom political allegiance may be demanded, such that Diane was subject to a patronage dismissal. Diane's conspiracy claim is, likewise, not viable."

Def. County's Reply 12, ECF No. 42.

Having carefully considered the 50-page Second Amended Complaint, the parties' legal briefs, and the governing law, and even assuming that Plaintiffs have alleged an underlying constitutional violation, the Court finds that Plaintiff has failed to adequately allege that the County had a custom or policy, promulgated by a *county* policymaker, that resulted in a deprivation of Plaintiff's constitutional rights under the First Amendment.

Who qualifies as a policymaking official is a question of state law. *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997); *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion)); *Pembaur*, 475 U.S. at 483. "[T]he specific identity of the policymaker is a legal question" and need not be pled.[6] The identification of those "officials or governmental bodies who speak with final policymaking authority for the local governmental actor [whose] action alleged to have caused" the constitutional violation is not a question of fact and must be resolved by the court by reviewing "relevant legal materials, including state and local positive law, as well as 'custom or usage having the force of law.'" *Jett*, 491 U.S. at 737; *Praprotnik*, 485 U.S. at 124. It is not dispositive that the state labels a position as a policymaker, but the court's "understanding of the actual function of a governmental official, in a particular area, will [depend] on the definition of the official's function under relevant

---

[6] *Zulema*, 2019 WL 5687512, at *8 (stating that "plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [municipality] either adopted a policy that caused [plaintiff's] injury or delegated to a subordinate officer the authority to adopt such a policy," (citing *Groden v. City of Dallas*, 826 F.3d 280, 284, 286 (5th Cir. 2016)) further stating that "[a] municipality can be held liable only when it delegates policymaking authority, not when it delegates *decisionmaking* authority" (citing *Pembaur*, 475 U.S. at 480–81) (emphasis in original)).

state law." *McMillian*, 520 U.S. at 786 (citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429, n.5 (1997). The Court must determine whether the policymaker acts for the state or the county by identifying the government officials who have the power to make official policy in a particular area, or on a particular issue. *McMillian*, 520 U.S. at 785 (citing *Jett*, 491 U.S. at 738).

In Plaintiff's Second Amended Complaint, Plaintiff alleges the County had a policy that effectively delegated its policymaking authority to the district judges "regarding the work environment Tarrant County employees must endure, including any hostile, intimidating or offensive work environment arising out of the requirement[,] that [the] associate judge[] refus[ed,] to participate in political service or related activity," concluding that this made the district judges county policymakers. Sec. Am. Compl. 40, ECF No. 34 (internal quotations omitted). Further, in response to Defendant County's motion to dismiss, Plaintiff points to paragraphs 57–59 of the Second Amended Complaint as sufficient allegations of "decisions by [Plaintiff's] employer and its policymakers" that resulted in a violation of her constitutional rights. Pl.'s Resp. to County Def. Mot. to Dismiss 20, ECF No. 40. In support of their motion to dismiss, the County alleges, that "none of the elected state district court judges is a *Monell* **county**-level policymaker, and, therefore, Tarrant County cannot be liable for the district judges' appointment or termination decisions or judicial conduct toward their political appointees." Def. County's Mot. to Dismiss 24, ECF No. 36 (internal citations omitted) (emphasis in original). The County further argues that "whether one is a *Monell* policymaker is a question of law, and Diane's allegations of who is a County policymaker need not be taken as true." Def. County's Reply 7, ECF No. 42.

To determine whether one is a final policymaker, the focus is not on whether the official is a policymaker in general, but rather if the official is the final policymaker with respect to the specific action at issue. *Brady v. Fort Bend County*, 145 F.3d 691, 699 (5th Cir. 1998). The

appropriate inquiries in this case are, first, whether the Defendant Judges are the final policymakers with respect to the specific action at issue here—terminating an associate judge—and second, if Defendant Judges were the final policymakers, whether they were acting as county or state policymakers with respect to the termination of an associate judge.

Beginning with the first question, the Texas Family Code governs the termination of an associate judge through § 201.004, which states in relevant part that "[t]he employment of an associate judge who serves more than two courts may only be terminated by a majority vote of all the judges of the courts which the associate judge serves." Tex. Fam. Code § 201.004. Additional legislation can be found in Texas Local Government Code § 151.004 which states that "[t]he commissioners court . . . may not attempt to influence the appointment of any person to an employee position authorized by the court under this subchapter." Tex. Loc. Gov't Code. § 151.004. The statutory authority to appoint or terminate an associate judge is therefore vested solely in the judges of the courts in which the associate judge serves, and the Local Government Code expressly prohibits even an attempt by the county to interfere with the appointment/termination process. Similar to the facts of *Brady*, the Texas district judges must apply to the County Commissioners Court for authorization to appoint an associate judge, and the County Commissioners Court is prohibited from interfering with who holds that appointment. Applying the Fifth Circuit's reasoning in finding the sheriff a final policymaker in *Brady v. Fort Bend County*, this Court finds that Defendant Judges were the final policymakers for this particular issue.[7]

---

[7] *Brady* is not instructive on whether the actor is a state or county policymaker because in *Brady* the county did not raise the argument that the defendant sheriff was acting as a state policymaker rather than a county policymaker, so the court did not address that issue. 145 F.3d at 702 n.4. In this case however, the County raises the issue. To resolve this issue, the Court looks to the decision in *McMillian*, 520 U.S. 781.

Turning to the question of which entity they are policymakers for, the Supreme Court in *McMillian* held that the defendant there represented the state, rather than the county, regarding the actions taken against plaintiff in that case. 520 U.S. at 791. The Supreme Court explained that although the county "ha[d] no direct control over how the [defendant sheriff] fulfill[ed] his law enforcement duty, the Governor and the attorney general [did] have this kind of control." *Id*. Accordingly, it affirmed the dismissal of McMillian's § 1983 claims against the county because the defendant sheriff was not acting as a county policymaker, but as a state policymaker. *Id*. at 793, 796. In coming to this determination, the Supreme Court looked to the state constitution and the state courts' interpretation of the relevant provisions under state law and concluded that the defendant sheriff represented the state when acting in a law enforcement capacity. *Id*. at 787–91. Under state law, the county had no law enforcement authority; so tort claims brought against the defendant sheriffs, based on their official acts, constituted suits against the state and not against the county. *Id*. at 789.

Following the guidance in *McMillian*, this Court begins with the Texas Constitution. As Defendant Tarrant County correctly states in its motion to dismiss, under the Texas Constitution, the legislative and executive branches of the Texas government are separate. Tex. Const. art. II, § 1. District courts are vested with judicial power through Article V and are comprised of "district judges, who are undeniable elected state officials." *Clark v. Tarrant County*, 798 F.2d 736, 744 (5th Cir. 1986) (internal citation omitted); Tex. Const. art. V, § 7. Through Article V, the Texas Constitution further vests authority to supervise the district courts in the Texas Supreme Court, making it responsible for the "efficient administration of the judicial branch," specifically for promulgating rules of administration and enforcing the Code of Judicial Conduct. Tex. Const. art. V, §§ 1-a (regarding discipline and removal of state judges for violation of rules promulgated by

the Supreme Court of Texas and the Code of Judicial Conduct; State Commission on Judicial Conduct), 31(a) (vesting responsibility for the efficient administration of the judicial branch in the Supreme Court of Texas).[8] The district courts themselves have "appellate jurisdiction and general supervisory control over the County Commissioners Court," with some exceptions. Tex. Const. art. V, § 8. On the other hand, the County Commissioners Court may not even attempt to influence the appointment of any person to an associate judge. *Garcia v. Reeves County*, 32 F.3d 200, 203 (5th Cir. 1994) (citing Texas Local Government Code § 151.004 when finding that "[i]n Texas, employees of any elected official serve at the pleasure of the elected official").

Just as in *McMillian*, the control over the particular action at issue is vested somewhere other than the County, and under Texas law, the County had no authority over how Defendant Judges exercised their appointment powers and conduct. Thus, claims brought against Defendant Judges for these acts, constitute suits against the state and not against the county. *See McMillian*, 520 U.S. at 789. While the County has no direct control over how the Defendant Judges exercise their appointment powers and conduct with regard to their associate judges, the Supreme Court of Texas does. To this, Plaintiff counters that the County, through its "power of the purse," could influence district judges' treatment of their employees. Pl.'s Resp. to Def.'s Mot. to Dismiss 22–23, ECF No. 40. But this would violate the local government code. *See* Tex. Loc. Gov't. Code § 151.004. The Texas Supreme Court has stated that, were the County to attempt to influence the district judges' appointment, the district judges could seek to exercise their supervisory authority

---

[8] TEX. CODE JUD. CONDUCT, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. B; TEX. R. JUD. ADMIN., *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. F app.; *In re Slaughter*, 480 S.W.3d 842 (Tex. Spec. Ct. Rev. 2015) (involving complaint of improper social media comments); *In re Hecht*, 213 S.W.3d 547 (Tex. Spec. Ct. Rev. 2006) (involving complaint of wrongful endorsement of federal judicial nominee); *In re Barr*, 13 S.W.3d 525 (Tex. Spec. Ct. Rev. 1998) (involving complaint of inappropriate sexual harassment of and conduct toward attorneys and litigants).

over the County Commissioners Court. *Henry v. Cox*, 520 S.W.3d 28, 36 (Tex. 2017) (citing TEX. CONST. art V, § 8).

In her response to the County's motion to dismiss, Plaintiff alleges only in a conclusory manner that the Defendant Judges were "Tarrant County's policymakers." However, when alleging actions taken by people she labeled as "policymakers," she does not allege any law that would indicate that the Defendant Judges were in fact acting as county policymakers. This Court finds that Defendant Judges were acting as state, rather than county, final policymakers regarding their conduct and appointment powers over the associate judges. Accordingly, after considering the Second Amended Complaint, the parties' legal briefs, and the governing law, the Court finds that the County cannot be held liable for the Defendant Judges' actions regarding the conduct and appointment powers over Plaintiff such that her claim against the County are **DISMISSED** with prejudice for failure to state a claim.

## IV. AMENDED COMPLAINT

Finally, Plaintiff states that she is willing to amend and address any pleading deficiencies. A party should be granted leave to amend to cure pleading deficiencies following the granting of a motion to dismiss when she can sufficiently show with particularity how she would cure any deficiency. A bare boned request is insufficient. *See Douglas v. DePhillips*, 740 Fed. Appx 403. And when a proposed amendment would be futile, denial of a request to amend is permitted. *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F. 3d 763, 766 (5th Cir. 2016). Here, Texas law sets out Plaintiff's job duties, provides the Defendant Judges are state actors, and no case provides notice that Defendant Bennett-Baca was prohibited from terminating Plaintiff. Plaintiff has been given an opportunity to present her best case. *See Schiller v. Physicians Resource Group Inc.*, 342 F. 3d 563, 567 (5th Cir. 2003) ("At some point, a court must decide that a plaintiff has had a fair

opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."); *see also* Order, ECF No. 33 ("[Plaintiff] has submitted three versions of the complaint, and while the Court will grant leave so that the second amended complaint serves as the live pleading, the Court finds it is time to resolve the Rule 12 challenges."). Accordingly, her request for leave to amend is **DENIED**.

## V.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant Judges' motion to dismiss without prejudice pursuant to Rule 12(b)(1), in part, and further **GRANTS** Defendant Judges' motion to dismiss pursuant to Rule 12(b)(6) with prejudice. Additionally, the Court **GRANTS** the County's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim with prejudice. Finally, Plaintiff's § 1983 claim against Judge Baca-Bennett in her individual capacity is hereby **DISMISSED** with prejudice based on qualified immunity.

**SO ORDERED** this **11th** day of **November, 2019.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**